**United States Court of Appeals
For the Fifth Circuit**

---

No. 00-10065

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

KHAMIS KHALIL DABEIT,

Defendant-Appellant,

---

Appeal from the United States District Court
for the Northern District of Texas

---

October 30, 2000

Before DAVIS and EMILIO M. GARZA, Circuit Judges, and POGUE[*], Judge.

PER CURIAM:

## FACTS AND PROCEEDINGS

Khamis Khalil Dabeit, a Jordanian national who is not a citizen of the United States, was deported from the United States on March 17, 1997. Around June 15, 1999, Dabeit, without receiving approval to reenter the country, was once again found in the United States. Dabeit was charged by indictment with a single count of illegal reentry after deportation in violation of 8 U.S.C. § 1326, to which he pled guilty.[1]

Dabeit appeals his sentencing proceeding. He bases his claim

---

[*] Judge of the U.S. Court of International Trade, sitting by designation.

[1] Dabeit and the attorney for the government did not reach a plea agreement. Rather, Dabeit pled guilty to the indictment.

on the absence of an invitation for allocution, and on the misapplication of enhanced sentencing through 8 U.S.C. § 1326(b)(2), due to an error in viewing his previous conviction as an "aggravated felony."

## RIGHT OF ALLOCUTION

Before imposing its sentence, the court is required by Rule 32 (c)(3)(C) to personally address the defendant, inquiring into the defendant's wish to speak on his behalf. *See Fed. R. Crim. P. 32(c)(3)(C)*. The right of allocution has several important functions. First, it gives the defendant one more opportunity before conviction "to throw himself on the mercy of the court." *United States v. Myers*, 150 F.3d 459, 463 (5th Cir. 1998). It also has symbolic importance, "maximizing the perceived equity of the [sentencing] process." *Id.* (citing *United States v. De Alba Pagan*, 33 F.3d 125, 129 (1st Cir. 1994)). This court reviews whether a district court complied with Rule 32(c)(3)(C) de novo. *See Id.* at 461. This Circuit does not subject the district court's failure to comply with Rule 32(c)(3)(C) to the harmless or plain error provision of *Fed. R. Crim. P. 52*. Rather, the district court's failure to comply with Rule 32(c)(3)(C) requires automatic reversal. *See Id.*

The question presented by this case is similar to that in *United States v. Echegollen-Barrueta*, 195 F.3d 786 (5th Cir. 1999). In *Echegollen-Barrueta*, the court personally addressed Echegollen

2

asking, "Do you have anything to say to me before I decide what to do in your case?" *Id.* at 788. Echegollen, believing the question was in the context of the government's claim that he had obstructed justice, replied that he had not attempted to escape. *See Id.* Even though the Judge repeated the question, the court found that Echegollen misunderstood the Judge's invitation to speak. Instead of making a statement to mitigate his offense, Echegollen believed he was asked to speak on the issue of obstruction of justice. As a result, Echegollen's response demonstrated a misunderstanding about what he could discuss and his sentence was vacated and remanded for failure to follow Rule 32(c)(3)(C). *See Id.*

In Dabeit's situation, however, there is no evidence that Dabeit misunderstood the court's invitation to speak. The court notified Dabeit prior to the conclusion of the guilty plea hearing that "[a]t your sentencing, you will have the absolute right to make a statement to me before you are sentenced if you choose to." *R.* Vol. 2, page 13. Then, at the sentencing hearing, the Judge addressed Dabeit asking, "Mr. Dabeit, one last shot, is there anything else you want to say? You don't have to say a thing, but if you want to, I'll listen to you. Anything else?" *R.* Vol. 4, page 3. The Judge in *Echegollen-Barrueta* merely asked the defendant if he had "anything to say." *Echegollen-Barrueta*, 195 F.3d at 788. As a result, that court held that there was not "clear[] and convincing[ . . . evidence] that the defendant knew

he had a right to speak on any subject of his choosing prior to the imposition of sentence." *Id.* Dabeit, however, was told by the Judge that this was his last opportunity to speak. This notification of his last opportunity to talk, coupled with the previous discussion at the plea hearing that Dabeit would have a chance to make a statement concerning sentencing, distinguishes Dabeit's situation from Echegollen's.

Dabeit also argues that since the court continued with a lengthy substantive discussion on Dabeit's motion for a downward departure, after asking Dabeit if he had anything more he wanted to discuss, there was a violation of Rule 32 (c)(3)(C). Dabeit claims that due to the continued discussion, the invitation was not a request to speak about sentencing, rather it was an invitation to discuss the downward departure motion. Although the court continued without further inviting Dabeit to speak, no violation of Rule 32 (c)(3)(C) occurred. Previously, this court held that it was unnecessary for a court to renew its invitation for allocution, even when further discussion took place between the invitation for allocution and the eventual pronouncement of sentencing. *See United States v. Washington*, 44 F.3d 1271, 1276-77 (5th Cir. 1995). Therefore, it is not necessary for a judge to renew the offer of allocution "or inquire why [the defendant] did not accept his invitation." *See Id.* at 1276 (internal citations and quotations omitted).

4

Although Dabeit was afforded an opportunity to speak after sentencing, the case law in this Circuit is unclear as to whether the ability to speak after the pronouncement of the sentence and before the sentence commences satisfies the right of allocution. Since Dabeit was invited to speak prior to sentencing, however, it is unnecessary to consider this issue at the present time.

Dabeit was invited to speak on his behalf and declined to do so. He was also previously informed of his right to allocution. Rule 32(c)(3)(C) was not compromised merely because further discussion ensued after the initial asking and the Judge's issuance of Dabeit's sentence. Therefore, Dabeit was given an opportunity for allocution and his sentence should not be remanded on this ground.

## AGGRAVATED FELONY

The Presentence Investigation Report (PSR) recommended a 16 level enhancement to Dabeit's sentence on the ground that he had previously been deported following a criminal conviction for an "aggravated felony." As a result, the district court sentenced Dabeit from 37 to 46 months imprisonment for illegal entry after deportation, rather than the six to twelve months available without the enhancement. The district court based its decision on the PSR, as well as a stipulation by Dabeit that his previous conviction was

an aggravated felony.[2]

Dabeit asserts that the district court's application of the sentencing guidelines was in error.  Since Dabeit did not raise this issue in the district court, this court will only review for plain error.  *See United States v. Olano*, 507 U.S. 725, 733 (1993). In order to satisfy this standard there must be (1) an error, (2) the error must be "plain," "clear," or "obvious," and (3) the error must affect a substantial right.  *See Olano*, 507 U.S. at 733.  If these factors are met, this court, in its discretion, should correct the error "if the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 736 (internal quotations and citations omitted).

In 1981, Dabeit was convicted for conspiracy to perpetrate a checking and savings account kite scheme in violation of 18 U.S.C. §§ 1014 and 2113(b).  Dabeit asserts that the government did not meet its burden of proof in demonstrating that his prior conviction constituted an aggravated felony under U.S.S.G. § 2L1.2(b)(1)(A).[3]

---

[2] A factual resume summarizing the events leading to the indictment was introduced at the rearraignment proceeding.  The factual resume, which listed Dabeit's previous conviction as an aggravated felony, was signed by the parties. The court also asked Dabeit if he agreed with the facts contained within the resume.  After an affirmative response, Dabeit was asked to stipulate under oath that the allegations in the factual resume were correct.

[3] Dabeit claims that in order for his § 1014 conviction to constitute an aggravated felony under U.S.S.G. § 2L1.2(b)(1)(A), the loss to any victim or victims must exceed $10,000.  *See U.S. Sentencing Guidelines § 2L1.2(b)(1)(A)(2000), 8 U.S.C. § 1101(a)(43)(M),(U)(2000)*.  According to Dabeit, the record contains no evidence that the loss to any victim exceeded the required statutory amount.  As a result, the government did not meet the requisite burden of proof.  Since we conclude that the conviction for § 2113(b) does satisfy the elements of an aggravated felony, we need not reach

*See U.S. Sentencing Guidelines §2L1.2(b)(1)(A)(2000), 8 U.S.C. § 1101(a)(43)(2000)*(defining aggravated felony for sentencing purposes).

The party, in this case the government, who seeks adjustment of the base offense level under the sentencing guidelines, must prove by a preponderance of the evidence that the adjustment is warranted. *See United States v. Patterson*, 962 F.2d 409, 415 (5th Cir. 1992). The evidence presented to the district court included the PSR, which recommended an enhanced sentence based on Dabeit's previous conviction, and Dabeit's factual resume adopted in the guilty plea, which stipulated that he had previously been convicted of an aggravated felony.

Generally, a PSR is considered "sufficient indicia of reliability, such that a sentencing judge may consider it as evidence in making the factual determinations required by the Sentencing Guidelines." *United States v. Huerta*, 182 F.3d 361, 364 (5th Cir. 1999). The PSR, however, cannot just include statements, in the hope of converting such statements into reliable evidence, without providing any information for the basis of the statements. *See United States v. Elwood*, 999 F.2d 814, 817-18 (5th Cir. 1993). In this case, the PSR recommended an enhancement of Dabeit's sentence based on his previous offense, an aggravated felony.

---

the issue of § 1014. The definition for aggravated felony relevant to Dabeit's § 2113(b) conviction can be found in 8 U.S.C. § 1101(a)(43)(G),(U) not § 1101(a)(43)(M),(U).

7

"Aggravated felony" is defined in 8 U.S.C. § 1101(a)(43). According to the statutory definition, aggravated felony includes theft and burglary offenses which carry a term of imprisonment of at least one year. *See 8 U.S.C. § 1101(a)(43)(G),(U)(2000).* Black's law dictionary defines theft as "the act of stealing." *Black's Law Dictionary 1477(6th ed. 1990).*

Dabeit's conviction for conspiracy, for which he was sentenced to four years imprisonment, in violation of 18 U.S.C. § 2113(b), involves the taking of another's property. The statute makes it illegal to take and carry away, "with [the] intent to steal or purloin, any property or money or any other thing of value exceeding $1,000, belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association." *18 U.S.C. § 2113(b)(2000).* Since Dabeit's previous conviction fits within the definition of a theft offense and his sentence was for more than one year, the court correctly enhanced Dabeit's sentence and the plain error test is not satisfied.

## PRESERVING AN ISSUE FOR REVIEW

At his guilty plea hearing, Dabeit was not informed that the "aggravated felony" provision of 8 U.S.C. § 1326(b)(2) was an essential element of the offense to which he pled guilty. Although this is consistent with the United States Supreme Court holding in *Almendarez-Torres v. United States*, 523 U.S. 224, 226-27 (1998),

8

Dabeit wishes to preserve the issue for further review based on a good faith belief that the decision will soon be overturned. This argument is without merit.

In a recent case, *Apprendi v. New Jersey*, 120 S.Ct. 2348, 2362 (2000), the Supreme Court expressly declined to overrule *Almendarez-Torres*. This court has a duty to follow precedent, especially Supreme Court precedent. *See Bhandari v. First National Bank of Commerce*, 829 F.2d 1343, 1352 (5th Cir. 1987)(Higginbotham, J., concurring).

> The Supreme Court has left no doubt that as a constitutionally inferior court, we are compelled to follow faithfully a directly controlling Supreme Court precedent unless and until the Supreme Court itself determines to overrule it. We may not reject, dismiss, disregard, or deny Supreme Court precedent, even if, in a particular case, it seems pellucidly clear to litigants, lawyers, and lower court judges alike that, given the opportunity, the Supreme Court would overrule its precedent.

*Hopwood v. State of Texas, et. al.*, 84 F.3d 720, 722 (5th Cir, 1996). Since the Supreme Court has unequivocally spoken on this issue, there was no error in failing to inform Dabeit that the aggravated felony provision was an essential element of his sentencing.

**CONCLUSION**

For the reasons stated above, we affirm the district court's sentencing of the appellant.