In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3608

Rafael Hernandez-Mancilla,

Petitioner,

v.

Immigration and Naturalization Service,

Respondent.


Petition for Review of an Order
of the Board of Immigration Appeals.
No. A35-214-671


Argued January 9, 2001--Decided APRIL 11,
2001



   Before Flaum, Chief Judge, and Bauer and
Coffey, Circuit Judges.

   Bauer, Circuit Judge.  Rafael Hernandez-
Mancilla, a native and citizen of Mexico
and a lawful permanent resident of the
United States, seeks review of the Board
of Immigration Appeals' ("BIA") dismissal
of his appeal from the Immigration
Judge's ("IJ") decision to deport him
under 8 U.S.C. sec. 1101(a)(43)(G). We
affirm the BIA's dismissal.

BACKGROUND

   On April 14, 1992, Hernandez-Mancilla
pled guilty to the Illinois offenses of
burglary of a motor vehicle, possession
of burglary tools, and possession of a
stolen motor vehicle. He was sentenced to
six months imprisonment and forty-eight
months probation, ordered to pay
restitution, and enrolled in a drug abuse
program. Hernandez-Mancilla violated the
terms of his probation by committing the
same offenses regarding a different motor
vehicle. On June 24, 1994, he again pled
guilty and was sentenced to two
additional years probation and enrolled
in another drug program. On February 29,

1996, Hernandez-Mancilla violated probation again, resulting in a sentence of six years imprisonment./1

On November 8, 1996, the INS charged Hernandez-Mancilla as deportable under the Immigration and Nationality Act ("INA"), 8 U.S.C. sec. 1227(a)(2)(A)(ii) for being convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. On January 30, 1997, the INS brought additional charges against him under 8 U.S.C. sec. 1227(a)(2)(A)(iii) because he was convicted of an "aggravated felony" under sec. 1101(a)(43)(G). Hernandez-Mancilla admitted his convictions and conceded deportability for moral turpitude, but submitted that he was not deportable for committing an "aggravated felony." On September 30, 1998, the IJ issued a short written decision deeming Hernandez-Mancilla deportable as an "aggravated felon," adjudging him ineligible for relief, and ordering him to be deported.

On appeal to the BIA, Hernandez-Mancilla argued that none of his convictions should be classified as an "aggravated felony." He first posited that his burglary conviction was not a "burglary offense" under the definition of burglary developed in Taylor v. United States, 495 U.S. 575 (1990). Second, he argued that his conviction for possession of a stolen motor vehicle was not a "theft offense" because it lacked the essential element of theft, namely the intent to permanently deprive the owner of his or her property. He contended that both the crimes of theft and receipt require this culpability, whereas possession does not. The INS countered that his burglary conviction could be classified as both a "theft offense" and a "burglary offense," and that his conviction for possession of a stolen motor vehicle was a "theft offense."

On September 10, 1999, the BIA affirmed the IJ's conclusion and dismissed the appeal. The BIA said that not all Illinois burglary convictions would "rise to the level of a theft offense under the Act, because a defendant [could] be convicted for burglary in Illinois for entering a building or automobile with the intent to commit any felony, not just theft." However, the BIA found this case

one in which burglary was a "theft offense." In so finding, the BIA relied on the language in the record of conviction for burglary, noting that Hernandez-Mancilla had "pled guilty to an indictment charging him with entering a motor vehicle 'with the intent to commit the offense of theft therein.'" This prompted the BIA to look to the definition of "theft" under 720 ILCS 5/16-1, which outlaws the taking of property with the intent to permanently deprive the owner of its use or benefit. The BIA noted that "the term theft offense incorporates violations other than those which are formally labeled theft." The BIA found that "[although intent] constitutes only one element of theft, [it] is the main element common to both theft and receipt of stolen property, the two offenses which are explicitly classified as theft offenses under section 101(a)(43)(G) of the Act." The BIA further noted, "not only did the respondent possess the intent to commit theft, but in entering the automobile without authorization, the respondent had clearly embarked on a plan of action in furtherance of this intent." In a footnote, the BIA wrote that sec. 1101(a)(43)(G) allows attempts to commit any listed "aggravated felony" to be classified as an "aggravated felony." The BIA reasoned that since attempted theft was a "theft offense," Hernandez-Mancilla's burglary conviction "should similarly fall under the definition of theft offense . . . ." Therefore, the BIA held that his burglary conviction was a "theft offense."

Finding this alone a sufficient basis for deportation, the BIA declined to address whether Hernandez-Mancilla's burglary conviction was a "burglary offense" or whether his conviction for possession of a stolen motor vehicle was a "theft offense." Hernandez-Mancilla appealed.

DISCUSSION

"Any alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. sec.1227(a) (2)(A)(iii). "[N]o court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed [an aggravated felony]." 8

U.S.C. sec. 1252(a)(2)(C). In other words, if Hernandez-Mancilla committed an "aggravated felony" we are stripped of jurisdiction. However, we have jurisdiction to ascertain whether we have jurisdiction. So, in a case such as this where the inquiry into jurisdiction and the merits is one in the same, we are empowered to determine whether an individual committed an "aggravated felony." See Xiong v. INS, 173 F.3d 601, 604 (7th Cir. 1999). An "aggravated felony" is, among other things, "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year." 8 U.S.C. sec. 1101(a)(43)(G). An offense may be classified as an "aggravated felony" "whether in violation of Federal or State law." 8 U.S.C. sec. 1101(a)(43). The question then is whether any of Hernandez-Mancilla's offenses may be classified as an "aggravated felony," a jurisdictional question we review de novo. See Solorzano-Patlan v. INS, 207 F.3d 869, 872 (7th Cir. 2000).

Solorzano-Patlan v. INS forecloses the question of whether a conviction under 720 ILCS 5/19-1 for burglary of a motor vehicle is an "aggravated felony" because it is a "burglary offense" under sec. 1101(a)(43)(G). We held that it is not. Therefore, we consider whether either Hernandez-Mancilla's conviction for burglary under 720 ILCS 5/19-1 or his conviction for possession of a stolen motor vehicle under 625 ILCS 5/4-103(a)(1) may be classified as a "theft offense." As mentioned, the BIA declined to address whether his conviction for possession of a stolen vehicle was a "theft offense" since it classified his burglary conviction as such. We opt for the opposite approach and address whether his possession conviction renders him deportable.

In reaching a decision, we use the approach taken in Solorzano-Patlan. The INS charged Solorzano-Patlan deportable as an "aggravated felon" for committing a "burglary offense" under 720 ILCS 5/19-1. Solorzano-Patlan argued that his offense ought not be classified as an "aggravated felony." We began our analysis by recognizing that since "burglary offense" was not defined under the INA, a definition had to be fashioned through interpretative devices. Since state

definitions of burglary vary wildly, we decided that how states classify crimes is not determinative; that is, even if a state labels an offense "burglary," we will not consider it per se a "burglary offense" under federal law. Relying on Taylor v. United States, we determined that, for the sake of uniformity, the conviction at issue must encompass the generic flavor of burglary. We discerned that burglary constituted "'the basic elements of unlawful entry, or remaining in, a building or structure, with intent to commit a crime.'" Id. at 874. We then looked to the record of conviction to discover whether Solorzano-Patlan's offense comprised these generic elements. See id. at 873, 875. Solorzano-Patlan had pled guilty to an Information which stated that he had "without authority, knowingly entered a 1994 Ford Explorer belonging to [another] with the intent to commit therein a theft." Id. at 871 (emphasis omitted). We noted that Solorzano-Patlan had admitted to having the intent to commit theft, not to having the intent to commit a felony, which is important since under the Illinois burglary statute a defendant may be charged for either. See id. at 873. We held that Solorzano-Patlan's conviction for burglary of a motor vehicle under 720 ILCS 5/19-1 was not a "burglary offense" because it did not jibe with the generic elements since it did not involve entering or remaining in a building or structure. See id. at 875.

Like the term "burglary offense," Congress did not define the phrase "theft offense (including receipt of stolen property)," and a plain reading of sec. 1101(a)(43)(G) does not reveal its meaning. Thus, following the rubric of Solorzano-Patlan, we must ascertain the generic elements of "theft offense (including receipt of stolen property)." At least two sister Circuits and the BIA have addressed the meaning of this phrase, so our interpretation is informed by theirs.

In Lopez-Elias v. Reno, the Fifth Circuit held that a petitioner's conviction under Tex. Penal Code Ann. sec. 30.04(a) for burglary of a vehicle with the intent to commit theft therein did not constitute a "theft offense" under sec. 1101(a) (43)(G) because the petitioner was only convicted for having

the intent to commit theft rather than for having actually committed theft. See 209 F.3d 788, 792 (5th Cir. 2000). While the court examined the text of the Texas statute and the specific charges of conviction, the court did not develop a generic definition of the phrase la Taylor before concluding that the petitioner's offense was not a "theft offense."

The Fifth Circuit in United States v. Dabeit further held that a conviction under 18 U.S.C. sec.sec. 1014 and 2113(b) for a check kiting conspiracy was a "theft offense" under sec.1101(a)(43)(G). See 231 F.3d 979, 983-84 (5th Cir. 2000). The court defined "theft" as "the act of stealing," part of the definition found in Black's Law Dictionary. See id. at 983. The court noted that the defendant's conviction involved the taking of another's property. See id. The statute under which the defendant was charged made it illegal to take property or money with the intent to steal or purloin. See id. at 984. The court concluded that the defendant's conviction "fit[ ] within the definition of a theft offense . . . ." Id.

The Ninth Circuit in United States v. Corona-Sanchez held that a defendant's conviction under Cal. Pen. Code sec.sec. 488 and 666 for "petit larceny with a prior" was a "theft offense" under sec.1101(a)(43)(G). See 234 F.3d 449, 455 (9th Cir. 2000). The Ninth Circuit, following Taylor, developed a modern, generic definition for "theft offense." The court looked at common law larceny, but believed that Congress intended to broaden the definition because the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208 expanded what constitutes an "aggravated felony." See id. at 454. Further, the court believed that since the term "theft offense" was used, rather than just "theft," and that "receipt of stolen property" was included parenthetically, Congress intended the phrase to have a broad meaning. See id. The Ninth Circuit found that the Model Penal Code ("MPC") offered a modern, generic definition. See id. at 454-55. The court noted that the Fifth Circuit in Dabeit adopted the Black's Law Dictionary definition, and concluded that the MPC's definition was consistent with that

definition. See id. at 455 n.4. The Ninth Circuit looked at the statute of conviction, which made it a crime to, among other things, "steal, take, carry, lead, or drive away the personal property of another . . . ." Id. The court then looked at the record of conviction and found that the defendant had attempted to steal a twelve pack of beer and a pack of cigarettes from a grocery store having already been convicted of a petit theft. See id. The Ninth Circuit held that the defendant's offense "substantially correspond[ed] to the theft-related offenses set forth in the [MPC]." Id.

We find the Ninth Circuit's approach to developing a modern, generic definition of "theft offense (including receipt of stolen property)" more in line with our approach in Solorzano-Patlan because it mimics Taylor. However, we decline to adopt the MPC wholesale because we fancy that it would be more consistent with Solorzano-Patlan to develop one definition rather than adopt a set of definitions like the MPC offers. To be thorough, we examine both the MPC and Black's Law Dictionary in developing a definition.

While the crime of theft, like burglary, has enjoyed a long legal history, creating a modern, generic definition presents a challenge because the term "theft" provides an umbrella for a sundry of offenses. Black's Law Dictionary defines "theft" as:

A popular name for larceny. The act of stealing. The taking of property without the owner's consent. The fraudulent taking of personal property belonging to another, from his possession, or from the possession of some person holding the same for him, without his consent, with intent to deprive the owner of the value of the same, and to appropriate it to the use or benefit of the person taking.

It is also said that theft is a wider term than larceny and that it includes swindling and embezzlement and that generally, one who obtains possession of property by lawful means and thereafter appropriates the property to the taker's own use is guilty of a 'theft'. Theft is any of the following acts done with intent to deprive the owner permanently of the possession, use or benefit of his

property: (a) Obtaining or exerting unauthorized control over property; or (b) Obtaining by deception control over property; or (c) Obtaining by threat control over property; or (d) Obtaining control over stolen property knowing the property to have been stolen by another.

Black's Law Dictionary 1477 (6th ed. 1990) (citations omitted). "Larceny" is defined as:

  Felonious stealing, taking and carrying, leading, riding, or driving away another's personal property, with intent to convert it or to deprive owner thereof. . . . The essential elements of a 'larceny' are an actual or constructive taking away of the goods or property of another without the consent and against the will of the owner or possessor and with a felonious intent to convert the property to the use of someone other than the owner.

Id. at 881. "Possession" entails "[h]aving control over a thing with the intent to have and to exercise such control." Id. at 1163. "Receiving stolen goods or property" means acquiring "physical dominion or apparent legal power to dispose of property and envisages possession or control as an essential element." Id. at 1269. The MPC sets forth a "[c]onsolidation of theft offenses." Model Penal Code sec. 223.1; see Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law sec.sec. 8.1, 8.8 (West 1986 & 1999). The consolidation subsumes eight offenses, namely: (1) theft by unlawful taking or disposition; (2) theft by deception; (3) theft by extortion; (4) theft of property lost, mislaid, or delivered by mistake; (5) receiving stolen property; (6) theft of services; (7) theft by failure to make required disposition of funds received; and (8) unauthorized use of automobiles and other vehicles. See Model Penal Code sec.sec. 223.2-223.9.

  About a year after the BIA's decision in Hernandez-Mancilla's case was rendered, the BIA issued In re V-Z-S-, Interim Dec. No. 3434, 2000 WL 1058931 (BIA Aug. 1, 2000). In V-Z-S- the respondent had been convicted under Cal. Veh. Code sec. 10851(a) for willfully driving and taking a vehicle without consent and with intent to either permanently or temporarily

deprive the owner of title and possession of the vehicle. The issue presented was whether the respondent's conviction was a "theft offense" under sec. 1101(a)(43)(G). Following Taylor, the BIA fashioned a definition for "theft offense" by examining the MPC, Black's Law Dictionary, and both federal and state statutes. The BIA emerged with the following definition: a "theft offense" encompasses all takings of property with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent. Based upon this generic definition, the BIA adjudged the respondent deportable, over dissent, for the commission of a "theft offense."

Soon thereafter, the BIA issued In re Bahta, Interim Dec. No. 3437, 2000 WL 1470462 (BIA Oct. 4, 2000). The respondent had been convicted under Nev. Rev. Stat. 205.275(1) for attempted possession of stolen property. The question was whether the respondent's conviction was an attempted "theft offense" under sec. 1101(a)(43)(G), (U). The BIA set out to develop a modern, generic definition for "receipt of stolen property" by canvassing the United States Code, some state codes, and the MPC for guidance. (We read Bahta as only defining "receipt of stolen property" rather than "theft offense (including receipt of stolen property).") The BIA concluded that the predominant modern view of the phrase "receipt of stolen property" is that it includes the knowing receipt, possession, or retention of another's property without consent. The BIA found that the common element among these offenses was that the offender exercised unauthorized control over another's property, which means that proof that the offender was involved in the actual taking is not necessary. The BIA found the conviction for attempted possession of stolen property fit this definition of "receipt of stolen property," and was thus an "aggravated felony."

So, what does "theft offense (including receipt of stolen property)" mean? Both the MPC and Black's Law Dictionary recognize that "theft" encompasses many crimes, which indicates that any definition ought to be broad. Corona-Sanchez and V-Z-S- note that Congress has indicated that "aggravated felony"

encompasses a wide range of offenses, a range which was widened further in 1996 because IIRIRA added offenses under the label "aggravated felony" and lowered the sentencing threshold from five years to one year under sec. 1101(a)(43)(G). Also, by choosing the words "theft offense" rather than just "theft," and by expressly including "receipt of stolen property," Congress signaled that it was not presenting an exhaustive list of offenses (i.e. just theft and receipt); rather, with its word choices, Congress indicated that the phrase ought to be given a broad read. See Corona-Sanchez, 234 F.3d at 455 ("If the word 'offense' does not restrict or clarify the word 'theft,' then it must broaden it."). And finally, other offenses listed as "aggravated felonies" reference other statutes, thereby limiting the scope of deportable offenses under those sections. See, e.g., 8 U.S.C. sec. 1101(a)(43)(B), (C), (D), (E), (F), (H), (I), (J), (K), (L), (M), (N), (O) & (P). The section at issue here, sec. 1101(a)(43)(G), is not limited by such reference. Therefore, the phrase "theft offense (including receipt of stolen property)" ought to be broadly construed.

We agree with a combination of the definitions developed in both V-Z-S- and Bahta, although we disagree with Batha to the extent that it is only presenting a definition for "receipt of stolen property" and not the entire phrase "theft offense (including receipt of stolen property)." This is because we do not read the entire phrase as merely a list of two offenses--theft and receipt./2 Rather, we read "theft offense" as an umbrella label, and "including receipt of stolen property" as indicating that the label encompasses a myriad of offenses. So, distilled to its essence, we hold that the modern, generic, and broad definition of the entire phrase "theft offense (including receipt of stolen property)" is a taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent. Now we must decipher whether Hernandez-Mancilla's possession conviction fits this generic mold.

Under the Illinois statutory scheme, the

crimes of receipt and possession of a stolen motor vehicle are in the same subsection within a section entitled "Anti-theft laws." The statute of conviction forbids, in part, a "person not entitled to the possession of a vehicle to receive, possess, conceal, sell, dispose, or transfer it, knowing it to have been stolen or converted . . . ." 625 ILCS 5/4-103(a)(1). The Illinois statute outlaws receiving, possessing, concealing, selling, disposing, and transferring. Since the statute houses many offenses, we look to the record of conviction to see what particular offense Hernandez-Mancilla was convicted of. In 1994, Hernandez-Mancilla pled guilty to an Indictment that read: "Rafael Hernandez committed the offense of possession of a stolen motor vehicle, in that He, not being entitled to the possession of a motor vehicle, to wit: a 1983 Oldsmobile Royale Delta 88 property of Luis Luna possessed said vehicle, knowing it to have been stolen or converted . . . ." Since Hernandez-Mancilla's conviction was for possession, we need not decide today whether the other offenses listed in the statute constitute "theft offenses (including receipt of stolen property)." Hernandez-Mancilla's conviction for possession of a stolen motor vehicle entailed a knowing exercise of control over another's property without consent, and thus it fits the generic definition of "theft offense (including receipt of stolen property)" under sec. 1101(a) (43)(G). And, since Hernandez-Mancilla was sentenced to six years, his prior conviction for possession of a stolen motor vehicle constitutes an "aggravated felony."

Hernandez-Mancilla also raises some constitutional arguments, which we may review under the "safety valve" exception, which grants us the power to review substantial constitutional claims raised by a deportee. See Morales-Ramirez v. Reno, 209 F.3d 977, 981 (7th Cir. 2000). However, we only have jurisdiction to review constitutional claims if they are substantial. So, again, the inquiry into jurisdiction and the merits is one. See id. at 981 & n.1. Hernandez-Mancilla argues that his guilty pleas for burglary and possession cannot be morphed into convictions for theft as it would alter the legal consequences of his plea such

that it would not have been made knowingly and intelligently. He cites Jideonwo v. INS, which held that subsequent legislation eliminating deportation relief could not be applied retroactively because there was evidence that the plea agreement was entered into in reliance of such relief. See 224 F.3d 692, 697-701 (7th Cir. 2000). Based on Jideonwo, he argues that the BIA's interpretation that is deportable for committing theft constitutes a retroactive application of the law which "transforms his plea into convictions for [an] entirely different criminal offense." He concludes that the BIA "cannot retroactively re-label these guilty pleas without undermining their knowing and voluntary nature."

While aliens enjoy due process rights in deportation hearings, such as notice and an opportunity to be heard, see Xiong, 173 F.3d at 608, Hernandez-Mancilla's argument is mistaken. There has been no retroactive application of legislation to his case; rather, statutory interpretation and application of the law have occurred. Neither this Court nor the BIA has convicted him of theft. Indeed, our analysis and the BIA's have assumed that he pled guilty to possession of a stolen motor vehicle under 625 ILCS 5/4-103(a)(1), not theft. Hernandez-Mancilla is deportable because his state conviction constitutes an "aggravated felony" under federal law. Furthermore, the due process notice requirement has been satisfied because Hernandez-Mancilla received an Order, which notified him that he was charged as deportable under sec. 1101(a)(43)(G), and he has been found deportable under sec. 1101(a)(43)(G).

We are likewise unpersuaded by Hernandez-Mancilla's argument in the same vein that it violates due process to render him deportable for theft because possession is not a lesser included offense of theft or receipt of stolen property. As explained, we have not said that possession is a lesser included offense of theft or receipt. Nor have we said that his possession conviction is really a conviction for theft or receipt under Illinois law. Rather, the phrase "theft offense (including receipt of stolen property)" contained in a federal statute has been interpreted and applied.

We have adopted the approach in Solorzano-Patlan in defining this phrase. In so defining, we have distilled the generic elements of the phrase and compared them with the elements of the crimes Hernandez-Mancilla was charged under and pled to. The lesser included offense analysis is of no import under this analysis.

Finally, citing Xiong, Hernandez-Mancilla argues that it would violate due process to deport him for committing an "attempted theft offense" because he was not charged on this ground. Since he is entitled to notice, Hernandez-Mancilla's argument would hold water if the BIA had held him deportable on this uncharged ground. See Xiong, 173 F.3d at 608. However, the BIA did not so hold. In a footnote, the BIA noted that an "aggravated felony" also includes "an at tempt or conspiracy to commit an offense described in this paragraph." See 8 U.S.C. sec. 1101(a)(43)(U). While the BIA mentioned sec. 1101(a)(43)(U) in its analysis, it did not hold that Hernandez-Mancilla was deportable under this section; rather, the BIA reasoned (albeit unpersuasively) that if an attempted "theft offense" could be classified as an "aggravated felony," Hernandez-Mancilla's admission that he had the intent to commit theft could also be classified as an "aggravated felony." The BIA's decision to deport Hernandez-Mancilla was based on the rationale that his burglary conviction was a "theft offense" under sec. 1101(a) (43)(G). Furthermore, any problem created by the BIA's reasoning is cured since we have eliminated this rationale from our analysis. After evaluating Hernandez-Mancilla's various constitutional arguments, we find them insubstantial, which strips us of jurisdiction to review them.

CONCLUSION

Based on the foregoing, the BIA's conclusion is AFFIRMED and the petition for review is DISMISSED.


/1 In the Order to Show Cause and Notice of Hearing, the INS charged Hernandez-Mancilla deportable for: (1) a burglary conviction on June 24, 1996; and (2) a conviction for unlawful possession of a stolen motor vehicle on April 14, 1992. During

argument before the IJ, Hernandez-Mancilla's attorney noted that the INS had listed the wrong date for the burglary conviction in the Order. His attorney said that the burglary conviction had been entered on February 29, 1996 not February 24, 1996. The IJ allowed the INS to orally amend the Order. However, both the INS and Hernandez-Mancilla's attorney were mistaken as to the dates. Hernandez-Mancilla's burglary conviction was actually entered on June 24, 1994. It was on February 29, 1996 that Hernandez-Mancilla was sentenced for violating his probation. In its opinion, the BIA did not expressly note the discrepancy, but did correctly recite that the conviction dates at issue were those in 1992 and 1994. We have clarified these dates to ensure Hernandez-Mancilla's due process right to notice was satisfied. We find that these discrepancies do not affect the substantive disposition of the case.

/2 Hernandez-Mancilla makes much ado that under Illinois law possession of a stolen motor vehicle is a separate offense than theft because theft requires a finding of intent to permanently deprive, whereas possession does not. See People v. Anderson, 721 N.E.2d 1121, 1124 (Ill. 1999); People v. Sullivan, 705 N.E.2d 928, 929 (Ill. App. 2 Dist. 1999). This is of no matter since we are fashioning a federal definition of "theft offense (including receipt of stolen property)." As noted, how states classify crimes is of little matter to this purpose. We do point out, however, that possession of a stolen motor vehicle is a more serious offense under Illinois law than theft, see Sullivan, 705 N.E.2d at 930, and that possession of recently stolen property gives rise to an inference that the person in possession obtained the property by theft, see People v. McCracken, 614 N.E.2d 418, 421 (Ill. App. 1 Dist. 1993).