IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-50050
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID WINSTON LOVING

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:99-CR-161-ALL

_____

April 27, 2001

Before JOLLY, MAGILL,* and BENAVIDES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:**

David Winston Loving was convicted for knowingly possessing firearms after being convicted of a felony, in violation of 18 U.S.C. § 922 (g)(1), and for possessing firearms knowing they were stolen, in violation of 18 U.S.C. § 922(j). He now appeals his conviction, claiming that (1) the district court erred in denying his motion to suppress evidence, (2) he was deprived of his Sixth

_____

*Circuit Judge of the Eighth Circuit, sitting by designation.

**Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Amendment right to counsel of his choosing, and (3) the district court abused its discretion in admitting evidence of other possible wrongdoing. He also challenges his sentence, arguing that the enhancement of his sentence was a violation of due process because of the failure to include his prior felonies in the indictment. He further contends that his sentence on the second count exceeds the statutory maximum. Because we conclude that there are no reversible errors, we affirm both Loving's conviction and sentence.

I

A

On April 8, 1999, David Winston Loving, a convicted felon, was arrested in Seguin, Texas after police found three firearms in the bed of his pick-up truck. Loving was parked at the Stor Mor rental units, in a pick-up truck with an attached U-Haul trailer. At the approach of police officer Juan San Miguel, who decided to investigate because of recent burglaries at the storage unit, Loving drove away. Officer San Miguel followed Loving, and pulled him over when he failed to signal a right turn.

When questioned about his presence at the storage units, Loving stated that he had stopped at the Dairy Queen across the street for coffee. He claimed that he had parked at the rental units because the truck and trailer were difficult to maneuver in the Dairy Queen parking lot. Loving also told the officer that he had rented the U-Haul trailer to help his niece move to Austin, and voluntarily offered to let the officer search the U-Haul trailer,

2

which was empty except for some blankets. The officer issued Loving a warning ticket for the traffic violation.

After giving Loving the citation, the officer requested and obtained Loving's consent to search the cab of the truck. In the trunk's cab, the officer found a police scanner tuned to the Seguin Police Department's frequency, and several locks and keys. He also found Loving's wallet, which contained his parole identification card, and, in a tool organizer behind the truck's seat, another wallet containing credit cards and identification cards in other people's names. When questioned about his parole card, Loving admitted to the officer that he had served time in prison for robbery and murder. This information was also provided by the police dispatch from the computer check on Loving's license. As other officers arrived at the scene, Officer San Miguel continued to search the cab, finding a VCR and tool set. In the chrome tool box in the back of the truck, the officers found a pair of bolt cutters.

At that point, Officer San Miguel and Officer Juan Garcia returned to the storage units and checked them for broken or cut locks. They also attempted to open the locks on the units using the keys found in Loving's truck. Finding no visible signs of a break-in, the officers returned to Loving's truck and searched the bed of the truck, which was covered by a tarp. In the bed of the truck, along with a microwave oven, a large trash bag with miscellaneous items, and a box of ceramics, the officers found two

shotguns and a rifle underneath the chrome tool box.  Loving was then read his <u>Miranda</u> warnings and arrested for being a felon in possession of a firearm.  When questioned about the guns after being read his <u>Miranda</u> warnings, Loving said that he had purchased the guns for his sons.  At trial, Loving's wife testified that she had purchased the guns from a trucker on the side of the road.

B

A two count superseding indictment charged Loving with (1) knowingly possessing firearms after being convicted of a felony, in violation of 18 U.S.C.§ 922(g)(1), and (2) possessing firearms knowing that they were stolen, in violation of 18 U.S.C. § 922(j). The government filed a "Notice of Enhanced Penalty," alleging that Loving was subject to a minimum sentence of fifteen years in prison for Count One under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), because he had at least three previous convictions for violent felonies or serious drug offenses.

Loving filed a motion to suppress the evidence found in the truck as evidence obtained in violation of the Fourth Amendment, which the district court denied after a hearing.  Immediately preceding the commencement of the trial, after discussions concerning plea bargaining, Loving's attorney filed a motion to withdraw, stating that Loving had fired him.  After hearing from both the prosecutor and Loving, the district court denied the motion.

The case proceeded immediately to trial, with Loving

4

stipulating that he was a convicted felon. The jury found him guilty of both knowingly possessing firearms and knowingly possessing stolen firearms. Using the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), to enhance Count One of the sentence, the district court sentenced Loving to concurrent sentences of 220 months' imprisonment on each count of the indictment, grouping the offenses together for the purpose of calculating the appropriate sentencing range.

## II

Loving first challenges the district court's denial of his motion to suppress the evidence found during the search of his truck. Loving argues that the officer's request to search the cab of the truck was unlawful because the search was beyond the scope of the traffic stop. He also claims that the officer had neither consent nor probable cause to search the bed of his truck.

We review questions of law contained in a ruling on a motion to suppress de novo, and review the district court's factual findings for clear error. See United States v. Jordan, 232 F.3d 447, 448 (5th Cir. 2000). The evidence is viewed in the light most favorable to the party that prevailed in the district court, in this case, the government. Id.

Loving does not dispute that his traffic violation justified the initial stop. He contends, however, that the officer's request to search the cab of his truck exceeded the reasonable scope of the

5

stop, because the request was unrelated to the traffic stop and because it served to detain Loving after the reason for the stop had ceased to exist. Whether the search was reasonable in scope is a question that relates to detention, not questioning. <u>United States v. Shabazz</u>, 993 F.2d 431, 436 (5th Cir. 1993). We have held that questioning that does not extend the duration of the stop, even if it is unrelated to the purpose of the stop, does not violate the Fourth Amendment. <u>Id.</u> at 437. Thus, the fact that the request to search Loving's truck was unrelated to the traffic violation does not establish a Fourth Amendment violation.

Loving's argument that he was detained after the reason for the stop had ceased to exist is also meritless. He contends that the officer's request to search the truck's cab extended the duration of the detainment beyond what was legally permissible for a traffic stop, because the officer had already issued a citation for the traffic violation. This contention, however, ignores the fact that the officer had returned Loving's license and registration at the time of the request. The officer did not attempt to delay or detain Loving in order to gain time to make a lawful search of his vehicle. Unlike the defendant in <u>United States v. Dortch</u>, 199 F.3d at 198, whose license and car rental papers were kept after the computer check was over, Loving was free to leave after the officer issued him the citation. Instead, he voluntarily consented to the search of his cab. Thus, the

6

officer's search of the truck's cab did not violate the Fourth Amendment.

Loving also argues that the officers lacked either consent or probable cause to search the bed of his truck, where the stolen guns were found. Loving contends that any consent that he gave was limited to the cab of the truck. This may be true, but even without consent, warrantless searches of automobiles are permitted under the Fourth Amendment if the officers have probable cause to believe that the vehicle contained contraband or other evidence of a crime. United States v. McSween, 53 F.3d 684, 686 (5th Cir. 1995). Whether an officer has probable cause to search a vehicle will depend on the totality of the circumstances, viewed in the light of the knowledge and observations made by the officer involved in the warrantless search. Id.

The officer here had probable cause to search the bed of the truck after he had completed his search of the cab of the truck. Officer San Miguel's attention was first drawn to Loving when he saw the truck parked between storage units that had recently been burglarized. Loving then drove off when the officer approached. The search of the truck's cab yielded a police scanner tuned to the frequency of the local police department; several locks and keys that, in Officer San Miguel's experience, could be used to steal items from storage units; and a wallet containing over eighteen credit and identification cards in several different names. The

7

cab also contained a VCR and a tool set, which the officer thought might be stolen property. These facts give rise to probable cause to search the rest of the vehicle. The officer's discovery of the bolt cutters in the truck's tool box also support a finding of probable cause.

Loving contends that probable cause dissipated when police returned to the storage facility and found no evidence of a break-in. Despite the officers' failure to find evidence of tampering at the storage unit, the totality of the circumstances suggested that there was a fair probability that contraband would be found in Loving's truck. Although there was no explicit evidence that Loving had broken into any of the storage units, the bolt cutter and the locks suggested that Loving could have covered up the signs of any burglary by relocking what he entered. Thus, even though a search of the storage units did not yield any evidence of tampering, the officers nevertheless had probable cause to search the bed of the truck based on the earlier lawful discoveries. Thus, the district court did not err in denying Loving's motion to suppress the evidence gathered during the search of the truck.

### III

Loving next argues that he was denied his Sixth Amendment right to counsel of his choosing, because the district court refused to allow Loving's attorney to withdraw after Loving fired him. Loving also contends that the district court's failure to

grant him a continuance to obtain new counsel was a denial of due process.

On the morning the trial was scheduled to begin, Loving addressed the court with questions concerning his possible sentence if he were to plead guilty. The district court explained that it could not guarantee his sentence, and described the federal plea bargain process. After a short recess, Loving's attorney filed a motion to withdraw, stating that Loving had fired him in the interim. When questioned, Loving complained that he was confused about plea bargaining and that he could not get a clear understanding about the plea bargain offer from his attorney. Loving then requested that he "be allowed time to either interpret things better or have some sort of better understanding." His comments suggest that he was attempting to weigh the plea bargain offer against the possibility of his success at trial.[1] The district court denied the motion to withdraw off the record, and the case proceeded to trial. Later on during the trial, the

---

[1]After discussing the plea bargain with the court, Loving stated
> And I thought I had pretty much on the right track here. There, you know – so, since I paid this guy here, I don't understand what he's saying. I'm asking that I be allowed time to either interpret things a little bit better or have some sort of better understanding. His success rate at one time was 85 percent at trial. I agree that the things might change, but it shouldn't change that drastic where he lost faith in winning a trial too. I think I can do better with something else like that.

district court denied the motion to withdraw on the record, noting that "the reason is that we're ready to go to trial. It's too late."

Loving received effective representation through trial and sentencing; the Sixth Amendment does not guarantee him the absolute right to the counsel of his choice. Because granting the motion to withdraw on the morning the trial was scheduled to begin would have resulted in significant delays, the district court did not abuse its discretion in denying the motion to withdraw. See United States v. Wild, 92 F.3d 304, 306 (5th Cir. 1996) (reviewing denial of motion to withdraw for abuse of discretion); United States v. Magee, 741 F.2d 93, 94 (5th Cir. 1984) (noting that it is within the judge's discretion to deny a change of counsel on the morning of trial).

There was also no abuse of discretion in the district court's failure to grant Loving a continuance to find alternative counsel. See United States v. Hughey, 147 F.3d 423, 431-32 (5th Cir. 1998). Although Loving's attorney filed a motion to withdraw after Loving fired him, Loving never specifically requested a continuance to find new counsel. He did not even indicate that he wanted to seek new counsel. Loving's previously retained counsel was prepared to proceed to trial, and the trial was scheduled to begin immediately. Beyond expressing that his attorney had failed to adequately clarify the plea bargaining process, Loving did not articulate why

10

he chose to fire his attorney.  These factors suggest that the district court's failure to granting a continuance to allow Loving time to find new counsel was neither arbitrary nor unreasonable, and we will therefore not disturb it on appeal.

IV

Over Loving's objections, the district court allowed the government to introduce into evidence the items found in the cab and bed of Loving's truck.  These items included a microwave, a VCR, a tool set, laundry tags, clothing, bolt cutters, books, and credit card and identification cards with other people's names on them.[2]  Loving argues that introduction of these items was improper under Federal Rule of Evidence 404(b) as evidence of other crimes, wrongs, or acts used to prove character.  He contends that the government introduced these items solely to suggest to the jury that Loving had stolen them, and that admission of the items was highly prejudicial and deprived him of a fair trial.

We review the district court's evidentiary rulings for abuse of discretion.  United States v. DeLeon, 170 F.3d 494, 497 (5th Cir. 1999).  Our review is necessarily heightened in criminal cases.  United States v. Richards, 204 F.3d 177, 199 (5th Cir. 2000).  Even if the district court abused its discretion, however,

---

[2]At the district court's request, Loving's attorney objected to these items as a group, before the start of the trial, so that the trial would not be interrupted by objections to each individual object.

11

the erroneous admission of evidence only requires reversal if the evidence had a "substantial impact" on the verdict. Id. at 203 (using the harmless error doctrine when reviewing admissions under 404(b)).

Loving was charged with being a felon in possession of a firearm and with knowingly possessing stolen firearms. The government argues that the items taken from the truck are intrinsic evidence, rather than extrinsic evidence subject to Rule 404(b), because their presence in the truck is inextricably intertwined with Loving's possession of the firearms. Some of the evidence that was introduced--laundry tags with the name of Eric Langerud, who testified that the guns had been stolen from his storage unit and whose name was on one of the gun cases, and a newspaper from El Campo dated just prior to when the guns were allegedly stolen from a storage unit in El Campo--is clearly intertwined with Loving's possession of the stolen firearms. At trial, Loving's wife testified that she bought the firearms from a trucker, on the side of the road. Because the laundry tags and newspaper clearly relate to the circumstances surrounding Loving's possession of the firearms and whether Loving was aware that they were stolen, these objects are intrinsic evidence of the crime that do not fall under Rule 404(b).

The other objects in the truck--including the credit cards, identification cards, VCR, microwave, and tool set--arguably do not

12

specifically relate to Loving's possession of the stolen firearms. Thus, we will consider these items to be extrinsic evidence, which are admissible only if the government can show that they are relevant to an issue other than Loving's character. The government contends that the objects are relevant to prove Loving's knowledge that the firearms were stolen. When evidence involves an extrinsic act, relevancy is determined by the similarity between the extrinsic act and the charged offense. See Richards, 204 F.3d at 199. The evidence must be sufficient to permit a reasonable jury to find that the defendant committed the extrinsic act. Id. Here, although the government only introduced proof that one of the items, an identification card,[3] was stolen from a storage unit, the total evidence introduced could permit a jury to find that Loving possessed other stolen property. Because evidence that Loving knowingly possessed stolen property on another occasion might help to demonstrate that he was aware--contrary to his position at trial that his wife had purchased the firearms--that he was in possession of stolen firearms, this evidence is relevant to something other than character. See United States v. Beechum, 582 F.2d 898, 912 n.15 (5th Cir. 1978) (noting that evidence of extrinsic evidence is admissible when it tends to show that the defendant knowingly committed a similar act on a prior occasion).

------

[3]A witness for the government testified that this identification card was stolen from a storage facility in Florida.

13

The second part of the Rule 404(b) test requires us to consider whether the evidence satisfies Federal Rule of Evidence 403, that is, whether the district court appropriately balanced the prejudicial effect of the evidence with its probative value. Because of the difficulty inherent in proving that Loving was aware that the firearms were stolen, the extrinsic evidence of other property possibly stolen from storage units is highly probative. We think that the district court acted within its discretion by finding that the evidence's probative value was not substantially outweighed by its potential for prejudice.

Furthermore, and in any event, the introduction of these objects is not reversible error. A review of the entire record and the evidence against Loving is fully convincing that the jury would have returned the same verdicts of guilty against Loving even without the prejudicial evidence.

V

Finally, Loving challenges his sentence. The challenge is on two grounds: first, that the felony convictions used to enhance his sentence under Count One had to be charged in the indictment as an element of the offense and; second, that his sentence on Count Two exceeded the statutory maximum. Because Loving did not raise these objections to his sentence in the district court, his claims are reviewed for plain error. United States v. Dabeit, 231 F.3d 979, 983 (5th Cir. 2000). To satisfy this standard, there must be an

14

error that is plain, clear or obvious, and the error must affect a substantial right. Id. We should not exercise our discretion to correct a forfeited error unless the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Jones v. United States, 527 U.S. 323, 389 (1999) (internal citations omitted).

Count One of the indictment charged Loving with being a convicted felon who knowingly possessed firearms in violation of 18 U.S.C. § 922 (g)(1). The district court enhanced Loving's sentence under this count to 220 months' imprisonment.[4] The court did this based on the Armed Career Criminal Act, 18 U.S.C. § 924(e), which provides for greater penalties if gun possession occurred after a defendant has three convictions for either serious drug offenses or violent felonies. The Supreme Court's recent decision in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000) held that factors that increase the maximum penalty for a crime must be alleged in the indictment and proved beyond a reasonable doubt. Loving thus contends that his sentence under § 924(e) violates due process because his three prior convictions were neither alleged nor proved beyond a reasonable doubt.

However, in Almendarez-Torres v. United States, 523 U.S. 224 (1998), the Supreme Court found no violation of due process when

---

[4]Section 922(g)(1) provides a maximum sentence of ten years' imprisonment.

15

the defendant's sentence (imposed under a plea bargain) was enhanced based on prior convictions that were not alleged in the indictment. The Court held that the convictions were sentencing factors, not elements of the offense, and, therefore, did not need to be specifically alleged in the indictment. The Supreme Court declined to overrule this decision in Apprendi. See 120 S.Ct. at 2362 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.") (emphasis added). Although Loving argues that the holding of Almendarez-Torres is limited to its facts, and that his case is distinguishable because he went to trial instead of pleading guilty, this court is bound to follow Supreme Court precedent that directly controls. See Dabeit, 231 F.3d at 984 (5th Cir. 2000). Thus, in accordance with Almendarez-Torres, the district court did not err in treating Loving's prior convictions as sentencing factors for the purpose of enhancing his sentence.

With respect to the second challenge to his sentence, on Count Two of the indictment Loving was charged with knowing that the firearms were stolen in violation of 18 U.S.C. § 922(j). Loving was sentenced to 220 months' imprisonment on that count. Loving is right when he notes that the 220 months' imprisonment exceeds the statutory maximum of ten years, as provided in 18 U.S.C. § 924(a)(2). Although the sentencing guideline range of 188 to 235

16

months for this offense was appropriately calculated by grouping Counts One and Two, where there are no enhancing sentencing factors in the statute, the sentence on any offense cannot exceed the maximum sentence that the statute provides. See U.S.S.G. § 5G1.1(a) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence."). Thus, the district court's sentence of 220 months' imprisonment on Count Two was improper.

The imposition of a sentence which exceeds the statutory maximum, as here, is plain error. See United States v. Sias, 227 F.3d 244, 246 (5th Cir. 2000). Under plain error review, however, we may vacate the sentence and remand for resentencing only if the error affects Loving's substantial rights. In sentencing cases, we generally find prejudice to substantial rights only if the alleged error resulted in an increased sentence for the defendant. United States v. Meshack, 225 F.3d 556, 577 (5th Cir. 2000). Loving's improper 220 month sentence on Count Two is to run concurrently with his 220 month sentence on Count One, and therefore does not increase the length of his sentence. Because this plain error does not affect Loving's substantial rights and his prison term will not be affected, there is no need to vacate and remand for correction.

## VI

For the reasons given above, the judgment of the district

17

court is

A F F I R M E D.