

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-7-2004

# Nugent v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 02-4329

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Nugent v. Atty Gen USA" (2004). *2004 Decisions.* Paper 669.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/669

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT

———

No. 02-4329

———

ERROL O'NEIL NUGENT,

Petitioner

v.

JOHN ASHCROFT, ATTORNEY
GENERAL OF THE UNITED STATES,

Respondent

———

Petition for Review of an Order
of the Board of Immigration Appeals
(No. A30-198-870)

———

Argued
January 12, 2004

Before: SLOVITER, RENDELL and
ALDISERT, Circuit Judges

(Filed May 7, 2004)

———

STEVEN A. MORLEY, ESQ. (Argued)
Morley, Surin & Griffin, P.C.
Constitution Place
325 Chestnut Street, Ste 1305-P
Philadelphia, PA 19106

ATTORNEY FOR PETITIONER

PETER D. KEISLER, ESQ.
Assistant Attorney General, Civil Division
DAVID V. BERNAL, ESQ.
Assistant Director
WILLIAM C. MINICK, ESQ.
ANTHONY C. PAYNE, ESQ.
JAMIE M. DOWD, ESQ. (Argued)
Office of Immigration Litigation
Civil Division
United States Justice Department
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044

ATTORNEYS FOR RESPONDENT

———

No. 04-1541

———

ERROL O'NEIL NUGENT,

Appellant

v.

PATRICIA MULLIN, ASSOC.
SPECIAL AGENT IN CHARGE OF THE
PHILADELPHIA OFFICE OF UNITED

STATES IMMIGRATION AND CUSTOMS AND ENFORCEMENT (USICE) OF THE DEPARTMENT OF HOMELAND SECURITY; THEODORE NORDMARK, ASSISTANT DISTRICT DIRECTOR FOR DEPORTATION AND DETENTION OF USICE IN PHILADELPHIA THE DEPARTMENT OF HOMELAND SECURITY,

Appellees

———

Appeal from the United States District Court for the Eastern District of Pennsylvania
(Civil No. 03-cv-06064)
District Judge: Honorable J. Curtis Joyner

———

Submitted under Third Circuit LAR 34.1(a)
March 22, 2004

—————

Before: SLOVITER, RENDELL and ALDISERT, Circuit Judges

———

Steven A. Morley
Morley, Surin & Griffin, P.C.
325 Chestnut Street, Suite 1305-P
Philadelphia, PA 19106

ATTORNEY FOR APPELLANT

MARY C. FRYE, ESQ.
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

ATTORNEY FOR APPELLEE

———

OPINION OF THE COURT

———

ALDISERT, Circuit Judge.

In the petition by Errol O'Neil Nugent at No. 02-4329 for review of a final order of removal by the Board of Immigration Appeals ("BIA"), we must decide whether we have jurisdiction inasmuch as Nugent was ordered removed from the United States under 8 U.S.C. § 1227(a)(2)(A)(ii) for having been convicted of two crimes involving moral turpitude. In the consolidated appeal at 04-1541 from a judgment of the United States District Court for the Eastern District of Pennsylvania we must decide whether a conviction under a Pennsylvania theft by deception statute constitutes an aggravated felony.

We hold that we lack jurisdiction in the petition for review of the final order of removal and will dismiss the petition, but, for reasons other than those stated by the district court, we affirm the judgment of the district court on the aggravated felony issue denying the writ of habeas

corpus without prejudice to Appellant's applying to the Attorney General for cancellation of the removal order pursuant to 8 U.S.C. § 1229b. We will first address the petition for review.

## I.

Nugent is a native and citizen of Jamaica who entered the United States on August 25, 1971, as a lawful permanent resident when he was seven years old. On January 30, 1984, he was convicted in the Court of Common Pleas of Montgomery County for the State of Pennsylvania of theft by unlawful taking (theft of movable property) in violation of 18 Pa. Cons. Stat. Ann. § 3921(a) (West 1973 & Supp. 1983) and receiving stolen property in violation of 18 Pa. Cons. Stat. Ann. § 3925(a) (West 1973 & Supp. 1983). The crime involved theft of two typewriters valued at a total of approximately $1,900. Nugent could have been sentenced to five years imprisonment, but instead he was sentenced to 12 months on probation. Theft of the two typewriters valued at this amount constituted a misdemeanor of the first degree. See 18 Pa. Cons. Stat. Ann. § 3903(b) (West 1973 & Supp. 1983). A misdemeanor of the first degree was punishable by up to five years imprisonment. See 18 Pa. Cons. Stat. Ann. § 1104(1) (West 1983); Com v. Schreiber, 466 A.2d 203, 208 (Pa. Super. 1983) (holding that a sentence of five years imprisonment would have been appropriate for a first-degree misdemeanor conviction of theft by unlawful taking).

On November 28, 2000, Nugent was convicted in the Court of Common Pleas of Montgomery County for the State of Pennsylvania of theft by deception in violation of 18 Pa. Cons. Stat. Ann. § 3922(a) (West 1983 & Supp. 2000). He was sentenced to a term of imprisonment of not less than six months but not more than 23 months.

It was on the basis of Nugent's 2000 Pennsylvania conviction that the Immigration and Naturalization Service ("INS")[1] charged Nugent with removability from the United States under 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(G). The original Notice to Appear stated:

> 4. You were, on November 28, 2000, convicted in the Court of Common Pleas, County of Montgomery, Commonwealth of

---

[1] The INS is now known as the Bureau of Citizenship and Immigration Services ("BCIS") within the Department of Homeland Security ("DHS"). See Homeland Security Act of 2002, Pub. L. No. 107-296, § 451, 116 Stat. 2135, 2195 (2002) (codified at 6 U.S.C. § 271 (Supp. 2003)). Within the BCIS is the Office of United States Immigration Enforcement ("USICE"). Id. Because the operative events in this case took place before the name change, INS is used here. In the appeal at 04-1541 the principal defendant in the habeas corpus proceedings was Patricia Mullen, Associate Special Agent in charge of the Philadelphia office of USICE.

Pennsylvania for the offenses of THEFT BY DECEPTION (DOCKET # 1061-00) and DRIVING UNDER THE INFLUENCE (DOCKET # 1974-00), in violation of Title 18, Pennsylvania Statutes, Section 3922 and Title 75, Pennsylvania Statutes, Section 3731.

(App. at 206.)

On September 7, 2001, Nugent filed a motion to terminate removal proceedings on the basis that his conviction for theft by deception under Pennsylvania law did not constitute an aggravated felony theft offense as defined by 8 U.S.C. § 1101(a)(43)(G).

On September 14, 2001, an immigration judge ("IJ") issued an interlocutory order denying Nugent's motion to terminate removal proceedings. The IJ concluded that Nugent's conviction for theft by deception constituted an aggravated felony theft under 8 U.S.C. § 1101(a)(43)(G).

On September 12, 2001, the INS charged Nugent with being subject to removal under 8 U.S.C. § 1227(a)(2)(A)(ii) for having been convicted of two or more crimes involving moral turpitude. In notifying Nugent of the additional charge, the INS stated in its "Additional Charges of Inadmissibility/Deportability" Form I-261:

> 6. You were convicted on January 30, 1984 in the Court of Common Pleas of Montgomery County for the State of Pennsylvania, of Theft of Movable Property and Theft by Receiving Stolen Property, in violation of Pennsylvania Criminal Laws Sections 3921 and 3925.

> 7. The conviction alleged above in Allegation No. 6 and the conviction alleged in Allegation No. 4 on the Notice to Appear dated February 14, 2001 did not arise out of a single scheme of criminal misconduct.

(App. at 138.)

At a hearing before the IJ on October 11, 2001, the following colloquy took place:

> Judge to Mr. Mazer [representing petitioner Nugent]:
>
> . . . .
>
> Q. And how do you plead allegations six and seven?
>
> A. We will concede those allegations.

Q. Okay. You concede that they constitute crimes involving moral turpitude then?

4

A. Ah, yes.

(App. at 124.)

On the same day, October 11, 2001, the IJ issued an oral decision concluding that Nugent was subject to removal as an aggravated felon. The IJ then added: "Further, in court today counsel has conceded the allegations set forth in the I-261. The Court finds the respondent is subject to removal as charged therein." (App. at 80.) As set forth above, the Form I-261 added paragraphs 6 and 7 in which the INS listed Nugent's 1984 conviction for theft by unlawful taking and referenced his 2000 conviction for theft by deception. Thus, the two crimes involving moral turpitude consisted of theft by deception, conviction date November 28, 2000, as contained in the INS' Allegation No. 4 in the original Notice to Appear, and theft by unlawful taking, conviction date January 30, 1984, as contained in the INS' Allegation Nos. 6 and 7 in the Form I-261. The IJ specifically ordered Nugent removed from the United States based on convictions for <u>both</u> the aggravated felony listed in the Notice to Appear and the two crimes of moral turpitude listed in the "Form I-261, Additional Charges of Inadmissibility/Deportability."

Nugent appealed the IJ's decision to the BIA, and on November 18, 2002, the BIA affirmed the IJ's decision without opinion, thereby adopting the IJ's decision as the final agency determination. Nugent timely appealed the BIA's order.

II.

The BIA had jurisdiction pursuant to 8 C.F.R. §§ 1003.1(b)(3) and 1240.15 to review the decision of the IJ. We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1) and (b) "to determine our jurisdiction under [8 U.S.C.] § 1252(a)(2)(C)." <u>Drakes v. Zimski</u>, 240 F.3d 246, 247 (3d Cir. 2001). Section 1252(a)(2)(C), the INA's no-review provision, bars us from reviewing any final removal order for an alien who has been ordered removed from the United States because of convictions for either an aggravated felony or two crimes of moral turpitude, among other offenses. Thus, we must "determine whether these jurisdictional facts are present." <u>Valansi v. Ashcroft</u>, 278 F.3d 203, 207 (3d Cir. 2002).

In determining the pure legal questions before us that govern our own jurisdiction, we apply a de novo standard of review. <u>Id.</u>

III.

The INA's no-review provision provides in relevant part:

> Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii) [aggravated felony], (B), (C), or (D) of this title, or any offense covered by section 1227(a)(2)(A)(ii) [two or more

5

crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct] of this title for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 1227(a)(2)(A)(i) of this title.

8 U.S.C. § 1252(a)(2)(C).

Nugent's 1984 conviction for theft by unlawful taking (theft of movable property) was a crime involving moral turpitude. The INA does not define moral turpitude, but we have noted that a legal dictionary defines the term as "[c]onduct that is contrary to justice, honesty, or morality." De Leon-Reynoso v. Aschroft, 293 F.3d 633, 636 (3d Cir. 2002) (quoting Black's Law Dictionary 1026 (7th ed. 1999)). Although Nugent received a sentence of only 12 months on probation for the 1984 conviction, he could have been sentenced to up to five years imprisonment. See 18 Pa. Cons. Stat. Ann. § 1104 (West 1983); 18 Pa. Cons. Stat. Ann. §§ 3903 and 3921 (West 1973 & Supp. 1983).

Likewise, Nugent's 2000 conviction for theft by deception constituted a crime involving moral turpitude. Nugent received a sentence of imprisonment of not less than six months but not more than 23 months. The 1984 and 2000 crimes did "not aris[e] out of a single scheme of criminal misconduct . . .

." 8 U.S.C. § 1227(a)(2)(A)(ii). Both crimes of moral turpitude could have resulted in sentences "of one year or longer[,]" id. § 1227(a)(2)(A)(i)(II), and whether the crimes were committed more than five years after Nugent's admission to the United States is irrelevant under 8 U.S.C. § 1252(a)(2)(C). Therefore, under the no review provision, § 1252(a)(2)(C), we lack jurisdiction to review the removal order based on Nugent's having committed two crimes involving moral turpitude, § 1227(a)(2)(A)(i)-(ii).

Although Nugent concedes that he is subject to removal based on his convictions for two crimes involving moral turpitude, he nevertheless contests the order of removal based on the aggravated felony conviction because he contends that the Pennsylvania theft by deception conviction set forth in paragraph No. 4 of the Notice to Appear does not constitute an aggravated felony under 8 U.S.C. § 1101(a)(43)(G). For its part, the government concedes that "Mr. Nugent is removable both by reason of having committed an offense that is properly considered an aggravated felony and by reason of having committed two crimes involving moral turpitude for which, respectively, he could have received a sentence of one year . . . ." (Br. for Resp't at 2.) The government nevertheless asks us to address the aggravated felony issue to obviate the need for Nugent to seek resolution of that issue via a petition for writ of habeas corpus. (Id. at 18-19 n.4.)

Having decided, or more properly, because the parties stipulate, that we have

6

no jurisdiction to review the final order bottomed on moral turpitude grounds, we must now decide whether this court possesses jurisdiction to consider the issue both parties have urged upon us by brief and oral argument, to-wit, whether a conviction under the Pennsylvania theft by deception statute constitutes an aggravated felony under 8 U.S.C. § 1101(a)(43)(G). It is to this issue that we now turn.

IV.

A federal court, whether trial or appellate, is obliged to notice want of jurisdiction on its own motion. Mansfield, C. & L.M. Ry. Co. v. Swan, 111 U.S. 379, 381-386 (1884). We have jurisdiction in immigration cases to determine whether jurisdictional facts are present. Drakes, 240 F.3d at 247. "Graven in stone is the maxim that parties cannot confer jurisdiction on a federal court by consent or stipulation." Reale Int'l, Inc. v. Federal Republic of Nigeria, 647 F.2d 330, 331 (2d Cir. 1981). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) (quoting Ex parte McCardle, 7 Wall. 506, 514 (1869)). "For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires." Id. at 101-102.

V.

Nugent asks us to review not the final order but one of two reasons for removal in the final order. For its part, the government recognizes that we lack jurisdiction because of the moral turpitude convictions but somehow seeks a decision on the aggravated felony issue. To assist us in deciding this very difficult issue, on February 11, 2004, we requested supplemental briefing:

> By statute, our jurisdiction is limited to reviewing final orders, 8 U.S.C. § 1252(a)(1), (b), (d) and (g), not a particular reason supporting the order. If we do not have jurisdiction to review the order based on one of the reasons (*i.e.,* Petitioner's removability on grounds of two crimes of moral turpitude), what authority do we have to review another reason supporting the order (*i.e.,* whether the BIA erred in determining that Petitioner's conviction constitutes an aggravated felony)?

In Petitioner's response dated March 1, 2004, he advised the court:

> In October 2003, Petitioner filed a petition for writ of habeas corpus in the Eastern District of Pennsylvania which was docketed at No: 03-cv-6064 and assigned to the Honorable J. Curtis Joyner, Judge of the Eastern District of Pennsylvania. That petition for writ of habeas corpus raised the single question that has been presented to

7

this Court, whether theft by deception under Pennsylvania law is a theft offense or a fraud/deceit offense. The reason for filing that petition at that time was that Mr. Nugent had just been detained by DHS and this Court denied a stay of removal. The government opposed the stay of removal in this Court on jurisdictional grounds – those raised recently by this Court – but that denial of the stay did not state a basis for the motions panel decision denying the stay. All facts regarding this Court's consideration of the matter, as well as the denial of the stay, was set forth in the petition for a writ of habeas corpus. Judge Joyner issued a stay shortly after the filing of the petition, but, on February 19, 2004, denied the Petition for Writ of Habeas Corpus, holding, without opinion or analysis, that theft by deception is an aggravated felony. On February 27, 2004, Petitioner appealed the order of Judge Joyner to this Court. Attached hereto is a copy of the notice of appeal as well as the docketing statement from this Court.

The habeas appeal has been docketed in this Court at 04-1541. By order dated March 5, 2004, we consolidated the habeas appeal from the United States District Court at No. 04-1541 with the present petition to review the Order of the BIA at No. 02-4329. In view of this consolidation, and in light of the thorny jurisdictional problem, we will not consider the aggravated felony issue in this proceeding at No. 02-4329. Rather, we will consider it in the appeal of the district court's habeas corpus judgment at No. 04-1541.

Accordingly, we will dismiss for lack of jurisdiction the petition to review the removal order based on Nugent's having committed two crimes involving moral turpitude. See 8 U.S.C. §§ 1252(a)(2)(C) and 1227(a)(2)(A).

We now turn to the appeal from the district court at No. 04-1541.

VI.

Nugent contends that the district court erred in denying his habeas corpus petition because it held his 2000 Pennsylvania conviction for theft by deception was "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(G). Because the denial of the writ of habeas corpus was a final order and an appeal was timely we have jurisdiction. 42 U.S.C. § 1291. Our review is plenary on this issue involving statutory construction. Valansi, 278 F.3d at 207.

Appellant represents to us that because in October, 2003 he was detained by the DHS, he applied for writ of habeas corpus under 28 U.S. C. § 2411(c) in the district court. "The petition . . . raised the single question that has been presented to

8

this Court, whether theft by deception under Pennsylvania law is a theft offense or a fraud/deceit offense." (Ltr. of Petitioner's Counsel to the court dated March 1, 2004, p. 3.) Although by order dated February 19, 2004, the district court denied the petition without a detailed statement of reasons, it stated in a footnote to its order: "This Court finds that the Petitioner was convicted of an aggravated felony and as such, he is removable. See 8 U.S.C. § 1101(a)(43)(G)."

For the reasons that follow, we disagree with the district court's sole reason for denying the writ. We hold that the Appellant is removable, but not on the basis of Section 1101(a)(43)(G) for having been convicted of an aggravated felony, as stated by the court, but solely on the basis of 8 U.S.C. § 1227(a)(2)(A)(ii) for having been convicted of two or more crimes involving moral turpitude. We will affirm the judgment of the district court on this ground only, and apply the tenet that we may affirm for reasons completely different from those advanced by the district court. PAAC v. Rizzo, 502 F. 2d 306, 308 n.1 (3d Cir. 1974); cert. denied, 419 U.S. 1108 (1975) ("[i]t is proper for an appellate court to affirm a correct decision of a lower court even when that decision is based on an inappropriate ground") (emphasis in original). We now discuss in detail why we disagree with the district court's stated reason that Nugent's conviction under Pennsylvania's theft by deception statute, 18 Pa. Cons. Stat. Ann. § 3922, constitutes an "aggravated felony" as defined by the INA. We have not previously addressed whether a conviction under Pennsylvania's theft by deception statute comes within the rubric of an aggravated felony as it relates to a "theft offense" under 8 U.S.C. § 1101(a)(43)(G) and/or "an offense . . . that involves fraud or deceit" under 8 U.S.C § 1101(a)(43)(M)(i).

The record indicates that on January 8, 1999, Nugent attempted to make two withdrawals totaling $3,450 from an account in the name of Earl Rampert at Willow Grove Bank in Abington Township, Pennsylvania. Earlier on the same day, Nugent had made separate withdrawals of $1,450 and $2,000, respectively, from the Willow Grove and Hatboro branches of Willow Grove Bank. The account from which Nugent attempted to make the withdrawals had been opened with a $100 deposit on December 13, 1998, and a check for $4,831.26 had been deposited into the account on January 6, 1999. Nugent admitted to police that the $4,831.26 check was counterfeit.

On November 28, 2000, Nugent was convicted in the Court of Common Pleas of Montgomery County for the State of Pennsylvania of theft by deception in violation of 18 Pa. Cons. Stat. Ann. § 3922 (West 1983 & Supp. 2000).[2] Section 3922

---

[2]The statute reads:

A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he

9

is taken word for word from § 223.3 of the Model Penal Code ("Code") promulgated by the American Law Institute ("ALI") in 1962. Nugent was sentenced to a term of imprisonment of not less than six months but not more than 23 months.

## VII.

The IJ concluded and the BIA agreed that Nugent's Pennsylvania conviction of theft by deception came within the purview of 8 U.S.C. § 1101(a)(43)(G), that includes as an

intentionally:

> (1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise;
> (2) prevents another from acquiring information which would affect his judgment of a transaction; or
> (3) fails to correct a false impression which the deceiver previously created or reinforced, or which the deceiver knows to be influencing another to whom he stands in a fiduciary or confidential relationship.

18 Pa. Cons. Stat. Ann. § 3922(a) (West 1983 & Supp. 2000).

"aggravated felony" any "theft offense (including receipt of stolen property) and robbery for which the term of imprisonment [is] at least one year."

Nugent argues that because his conviction for theft by deception involved fraud or deceit, it is not a "theft offense" under 8 U.S.C. § 1101(a)(43)(G), but a fraud or deceit offense under 18 U.S.C. § 1101(a)(43)(M)(i), in which "[t]he term 'aggravated felony' means . . . an offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds $10,000[.]" The loss suffered by the victims of Nugent's theft by deception did not exceed $10,000, and thus the INS did not charge him with removability based on Section 1101(a)(43)(M)(i).

Whether Nugent's theft by deception offense is a "theft offense" and/or a "an offense involving fraud or deceit" is a distinction with a serious difference, as it carries a significant consequence for Nugent. There is no minium dollar amount to constitute an aggravated felony if the Pennsylvania conviction is a "theft offense" as contemplated by Section 1101(a)(43)(G), but if it is "an offense that . . . involves fraud or deceit" and the loss to the victim or victims is $10,000 or less, it would not qualify as an aggravated felony under Section 1101(a)(43)(M)(i). Here, the bad check amounted to only $4831.26.

Carrying his reasoning one step further, Nugent argues that although he is subject to removal based on his convictions for two crimes involving

10

moral turpitude, convictions on this ground alone do not prevent him from applying for cancellation of the removal order pursuant to 8 U.S.C. § 1229b. Having a conviction that is deemed an aggravated felony, however, would make Nugent ineligible to apply for the cancellation. See 8 U.S.C. § 1229b(a)(3) (stating that the Attorney General may not cancel removal in the case of an alien who has been convicted of an aggravated felony).

Nugent argues first that the determination of what constitutes a "theft offense" in the context of the INA's definition of an "aggravated felony" is made by reference to a federal standard rather than the labels attached to crimes by Pennsylvania's criminal laws. See Taylor v. United States, 495 U.S. 575, 592 (1990) (stating that the term "burglary" in 18 U.S.C. § 924(e) "must have some uniform definition independent of the labels employed by the various States' criminal codes"); In re V-Z-S-, 22 Interim Decision 1338 (BIA 2000) (explaining that "we generally apply a federal standard in determining whether a state offense fits within the aggravated felony definition").

Nugent is correct in saying that Pennsylvania's labeling of the crime as theft by deception is not determinative of its status as a theft offense under Section 1101(a)(43)(G). Rather, this court must examine the plain language of the INA and "assume that the legislative purpose is expressed by the ordinary meaning of the words used." INS v. Phinpathya, 464 U.S.

183, 189 (1984) (internal quotations and citations omitted).

Moreover, Nugent contends that Congress' inclusion in Section 1101(a)(43)(M)(i) of the language "fraud or deceit in which the loss to the victim or victims exceeds $10,000" demonstrates that Congress did not intend fraud or deceit offenses involving $10,000 or less to nevertheless be defined as aggravated felonies under Section 1101(a)(43)(G). See INS v. Cardoza-Fonseca, 480 U.S. 421, 432 (1987) (explaining "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion") (internal quotations and citation omitted).

Although we reject Nugent's "either-or" argument, for the reasons that follow, we agree with his contention that an offense under Pennsylvania's theft by deception statute falls within Section 1101(a)(43)(M)(i) so that it would not be an aggravated felony unless the victim suffered a loss exceeding $10,000. But we must go further, we must decide whether the Pennsylvania statute must also meet the requirements of Section 1101(a)(43)(G).

VIII.

In aligning state and federal criminal offenses, previously this court has applied a "formal categorical approach" that requires comparison of the elements of the state law offense to see if they

"encompass[] acts beyond those subject to prosecution under the federal definition." Drakes, 240 F.3d at 248-249 (noting the Supreme Court's endorsement of such an approach in Taylor, 495 U.S. at 600).

> Where federal criminal statutes use words of established meaning without further elaboration, courts typically give those terms their common law definition. Moskal v. United States, 498 U.S. 103, 114 . . . (1990); Gilbert v. United States, 370 U.S. 650, 655 . . . (1962) ("in the absence of anything to the contrary it is fair to assume that Congress used ['theft'] in the statute in its common-law sense."). If research into the common law yields several competing definitions, however, courts should look to the reading that "best accords with the overall purposes of the statute" even if it is the minority view. Moskal, 498 U.S. at 116-17 . . . . Where the traditional definition is out of step with the modern meaning of a term, more "generic, contemporary" definitions--such as those found in state statutes--may apply. See Taylor, 495 U.S. at 596, 598 . . . . Furthermore, "Congress' general purpose in enacting a law may prevail over this rule of statutory construction" altogether. Id.

Drakes, 240 F. 3d at 249.

Under this approach, "we must examine [Pennsylvania's theft by deception] law to see if it encompasses acts beyond those subject to prosecution under the federal [theft offense] definition[,]" as contemplated by 8 U.S.C. § 1101(a)(43)(G). Id. at 249. More specifically, we must determine whether a Pennsylvania theft by deception offense is also an "offense involving fraud or deceit" set forth in 8 U.S.C. § 1101(a)(43)(M)(i).

Unfortunately the INA does not define "theft offense," and equally unfortunately, Congress has not supplied a definition of "theft" or "larceny" in the galaxy of federal offenses. And, in the context of the facts in this case, we are unwilling to say that the contretemps involving a theft offense crime and a fraud or deceit crime is free from ambiguity. We therefore must refer to the teachings of Drakes and follow the "formal categorical" approach.

IX.

Our starting point is clear. Where federal criminal statutes use words of established meaning without further elaboration, courts typically give those terms their common law definition.

The common law spoke in terms of "larceny," rather than "theft" and the words are used interchangeably. Blackstone defined larceny simply as "the felonious taking and carrying away of the personal goods of another." 2 Blackstone, Commentaries on the Laws of England, Book IV, at 230 (1879). But in the

12

development of the common law, courts defined larceny in more comprehensive terms. The refined common law description appears to be "the felonious taking by trespass and carrying away by any person of the personal goods or things of another from any place, without the latter's consent and with the felonious intent to deprive the owner of his or her property permanently and to convert it to the taker's own use . . . ." 50 Am. Jur. 2d, Larceny § 1. Professor Wayne R. LaFave supplies a concise summary:

Larceny at common law may be defined as the (1) trespassory, (2) taking and (3) carrying away of the (4) personal property (5) of another (6) with intent to steal it. American statutes dealing with larceny as a discrete offense have generally left the six elements of the crime unchanged, except that there has been considerable enlargement of the kinds of property which can be the subject of larceny.

Wayne R. LaFave, 3 Substantive Criminal Law § 19.2, at 62 (2nd ed. 2003) (footnote omitted).

Before statutory offenses appeared on the scene, "[c]*hoses in action* including bonds and notes of all classes, according to the common law, are not the subject of larceny, being mere rights of action, having no corporeal existence; though . . . a person may be indicted for stealing the paper on which they are written." I Wharton's Criminal Law § 876, at 766 (10th ed. 1896) (emphasis added). A bank check was considered a chose-in-action

excluded from the common law offense of larceny. See Bell v. United States, 462 U.S. 356, 360 (1983).

Thus, it would seem that the modern crime of obtaining property by false pretenses was not even a crime at common law. To plug the loophole, in 1757 Parliament enacted a statute that punished one who "knowingly and designedly, by false pretense or pretenses, shall obtain from any person or persons, money, goods, wares or merchandises, with intent to cheat or defraud any person or persons of the same." 30 Geo II, c. 24 (1757) (cited in LaFave, supra, at 114). In the eighteenth century, "[t]he theoretical distinction between false pretenses and larceny by trick may be stated simply. If a thief, through his trickery, acquired title to the property from the owner, he has obtained property by false pretenses; but if he merely acquired possession from the owner, he has committed larceny by trick." Bell, 462 U.S. at 359-360 (emphasis added).

Specific to Pennsylvania, our research discloses that the false pretenses statute, 30 Geo II, c. 24, was not "received" by the "province" prior to the Declaration of Independence and the subsequent creation of the present Commonwealth:

> An act was passed on the 28th January, 1777, entitled 'An Act to revive and put in force such and so much of the late laws of the province of Pennsylvania, as is judged necessary to be in force in

this commonwealth.' In this act it is provided, that the common law, and such of the statute laws of England as have been heretofore in force in the said province, shall be in force, except as hereafter excepted.

Samuel Roberts, Digest of Select British Statutes xv (1847) (hereinafter "Digest") (discussed in Commonwealth v. Guy, 41 Pa. D & C 2d 151, 156 (1966) (Aldisert, J.)). An examination of Pennsylvania's official compendium of British Statutes that were deemed to be in effect at the time Pennsylvania became a state reveals that the statute 30 Geo II, c. 24 was not included. See generally, Digest (containing the full December 14, 1808, Report to the Pennsylvania legislature by the Justices of the Supreme Court of Pennsylvania "of the English statutes which are in force in the said commonwealth, and of those of the said statutes which in their opinion ought to be incorporated into the statute laws of the said commonwealth[,]" id. at xv).

From the foregoing discussion, we must conclude that the government may not find support for its position in the common law crime of larceny, or theft, because the property that was the subject of its asportation had to be tangible and corporeal. Choses-in-action, like bonds, notes, and, to be sure, modern bank checks, were not considered goods or property in the context of common law larceny. Similarly, Nugent finds no succor

in the common law because the crime of false pretenses, a fraud or deceit crime, was the product of Parliament and not the collective experience of the judiciary.

Following the direction of the "categorical approach" in Drakes, if research into the common law does not supply the answer, we look to the reading that best accords with the overall purpose of the statute. In so doing, however, "[w]here the traditional definition is out of step with the modern meaning of a term, more 'generic, contemporary' definitions – such as that found in state statutes – may apply." Drakes, 240 F.3d at 249 (quoting Taylor, 495 U.S. at 596).

X.

As early as 1925, Judge Cardozo was preaching the use of generic, contemporary definitions rather than older, if not truly ancient, approaches. When speaking of the difference between larceny and embezzlement, he said, "[t]he distinction, now largely obsolete, did not ever correspond to any essential difference in the character of the acts or in their effect upon the victim. The crimes are one to-day in the common speech of men as they are in moral quality." Van Vechten v. Am. Eagle Fire Ins. Co, 146 N.E. 432, 433 (N.Y. 1925).

In 1983, the Supreme Court was faced with a problem similar to what we face in this case. Bell, 462 U.S. at 357. Here, we must decide whether the Pennsylvania offense of larceny by deception (trick) involving $10,000 or less is an "aggravated felony" as defined in

Section 1103(a)(43) of the INA. Whereas in <u>Bell</u>, the Court had to interpret the bank robbery provision, 18 U.S.C. § 2113(b), that imposes criminal sanctions on "[w]hoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value, exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association." 462 U.S. at 357-358.

In <u>Bell</u>, the Court discussed extremely technical distinctions present in old interpretations of two offenses – larceny by trick and false pretenses. Bell opened a bank account and deposited therein a $10,000 check belonging to another. After the check cleared, he closed the account and was paid the total balance in cash. He was arrested and convicted. The question for decision was whether the restricted common law definition of robbery should apply. Although the court was faced with a robbery statute, its discussion concentrated on concepts of larceny by trick.

The Court concluded, "Congress has not adopted the elements of larceny in common-law terms[,]" explaining that the statutory language "takes and carries away" represents merely one element of common law larceny and "is entirely consistent with false pretenses." <u>Id.</u> at 360. Moreover, the statutory language "with intent to steal or purloin" has no established common law meaning. <u>Id.</u> (citing <u>United States v. Turley</u>, 322 U.S. 407, 411-412 (1957)). The Court pointed

to two other aspects of § 2113(b) that indicate Congress' "intention to go beyond the common-law definition of larceny." <u>Id.</u> First, whereas common law larceny excluded "theft of a written instrument embodying a chose in action[,]" Section 2113(b) is broader in that it includes "any property or money or any other thing of value exceeding $100." <u>Id.</u> (citing W. LaFave & A. Scott, Handbook on Criminal Law 633 (1972)). Second, whereas common law larceny required theft from the owner's possession, Section 2113(b) is more expansive in that "[i]t applies when the property 'belong[s] to,' or is 'in the care, custody, control, management, or possession of,' a covered institution." <u>Id.</u> at 360-361 (citations omitted). Based on the above analysis, the Court held that notwithstanding the "common law" label attached to § 2113(b), more "generic, contemporary" definitions proscribe Bell's conduct here, explaining:

> Although the term "larceny" appears in the legislative reports, the congressional purpose plainly was to protect banks from those who wished to steal banks' assets – even if they used no force in doing so . . . . To the extent that a bank needs protection against larceny by trick, it also needs protection from false pretenses. We cannot believe that Congress wished to limit the scope of the amended Act's coverage, and thus limit its remedial purpose, on the basis of an arcane and artificial distinction more suited to the social conditions

15

of 18th century England than the needs of 20th century America. Such an interpretation would signal a return to the "incongruous results" that the 1937 amendment was designed to eliminate.

462 U.S. at 362.

Thus, the marching order we receive from the Court is that in interpreting federal criminal statutes where there is no specific definition, do not fall in love with the label attached to an offense.

We now turn to an analysis of the "generic, contemporary" definitions of the terms "theft offense," Section 1103(a)(43)(G), and "an offense that involves fraud or deceit," Section 1103(a)(43)(M)(i), to determine whether either or both of these "aggravated offense" provisions applies to offenses under Pennsylvania's theft by deception statute. For this we look to logical reasoning and the background of the "aggravated offense" provisions enacted by Congress and the foundation of the theft by deception statute adopted by Pennsylvania's legislature.

XI.

At the onset, we agree with our sister circuits that it was Congress' intent for a "theft offense" to include more than what was considered larceny at common law: "[B]y choosing the words 'theft offense' rather than just 'theft,' . . . Congress signaled that it was not presenting an exhaustive list of offenses (i.e. just theft and receipt); rather, with its word choices, Congress indicated that the phrase ought to be given a broad read." See Hernandez-Mancilla v. INS, 246 F.3d 1002, 1008 (7th Cir. 2001); see also United States v. Corona-Sanchez, 291 F.3d 1201, 1205 (9th Cir. 2002) (en banc) ("Congress used the words 'theft offense' rather than just 'theft,' thus indicating that the phrase ought be read to incorporate different but closely related constructions in modern state statutes."). Under the Code, "theft" includes theft by unlawful taking or disposition; theft by deception; theft by extortion; theft of property lost, mislaid, or delivered by mistake; receiving stolen property; theft of services; theft by failure to make required disposition of funds received; and unauthorized use of automobiles and other vehicles. Model Penal Code §§ 223.2-223.9. In Hernandez-Mancilla, the Seventh Circuit engaged in an extensive discussion of the background of the term "theft offense" as used by Congress in the INA, including an evaluation of theft offenses set forth in the Code, and came up with the definition: "a taking of property or an exercise of control over property without consent." 246 F.3d at 1009. The Ninth Circuit has adopted this definition, Corona-Sanchez, 291 F.3d at 1205, and a panel within this Circuit has relied on it in a not-for-publication opinion, Williams v. INS, 54 Fed. Appx. 55 (3d Cir. 2002) (Judges Fuentes, Sloviter and Debevoise).

We agree that given this broad definition, Nugent's bad check transaction for which he was convicted under the

16

Pennsylvania theft by deception statute is a "theft offense" as set forth in Section 1103(a)(43)(G). Indeed, a worthless check is "property" within the scope of Pennsylvania's theft by deception statute. As we have explained previously, in common law larceny it was not so regarded: "common law larceny was limited to thefts of tangible personal property. This limitation excluded, for example, the theft of a written instrument embodying a chose in action." Bell, 462 U.S. at 362. Pennsylvania's consolidated theft statute, which we note was taken verbatim from Code § 223.0, defines "property" in the context of theft offenses:

> Anything of value, including real estate, tangible and intangible personal property, contract rights, *choses-in-action*, and other interests in or claims to wealth, admission or transportation tickets, captured or domestic animals, food and drink, electric or other power.

18 Pa. Cons. Stat. Ann. § 3901 (emphasis added). Wharton teaches that a chose-in-action includes "bonds and notes of all classes." Wharton's Criminal law, supra, § 876, at 62. A chose-in-action is defined as "[a] right to receive or recover a debt, or money, or damages for breach of contract, or for a tort connected with contract, but which cannot be enforced without action," and includes "a check on a bank." See 1 Bouvier's Law Dictionary 483 (8th ed. 1914).

We must conclude then that a bank check is regarded as property in the context of "generic, contemporary" larceny, or theft, concepts requiring "caption" (when the actor secured dominion over the property of another) and "asportation" (carrying away of the other's property), and therefore Nugent's bad check transaction for which he was convicted under Pennsylvania's theft by deception statute is a "theft offense" under 18 U.S.C. § 1101(a)(43)(G). This does not, however, end our inquiry.

The sole question for decision is whether within the purview of Pennsylvania's theft by deception statute, Section 3922, Nugent's conviction for passing a bad check represents "an offense involving fraud or deceit" under 8 U.S.C. § 1101(a)(43)(M)(i), notwithstanding that it also constitutes a "theft offense" under 8 U.S.C. § 1101(a)(43)G). If we decide that Nugent's conviction is "an offense that involves fraud or deceit" as well as "a theft offense," then to qualify as an aggravated felony under the INA it must meet the requirements of Section 1101(a)(43)(M)(i), loss to the victim of more than $10,000, in addition to Section 1101(a)(43)(G), term of imprisonment of at least one year. Here it is stipulated that Nugent's state conviction was based on a bad check amounting to only $4,831.26, and therefore Nugent's conviction could not be an aggravated felony if Section 1101(a)(43)(M)(i) applies.

And the distinction is especially critical to Nugent because if we determine that both the district court in the habeas corpus proceeding and the IJ in the

17

removal proceeding erred in concluding that his state offense amounted to an aggravated felony under the INA, then, as we have emphasized previously, Nugent will be able to apply for cancellation of removal pursuant to 8 U.S.C. § 1229b. Conviction of an "aggravated felony" prohibits such relief. See 8 U.S.C. § 1229b(a)(3).

For the reasons that follow, we are persuaded that Appellant is correct in his contention that he was not guilty of an aggravated felony when he was convicted of Pennsylvania's statutory offense of theft by deception in which the victims' loss did not exceed $10,000.

XII.

Title 8 U.S.C. § 1101(a) provides:

(43) The term 'aggravated felony' means –

(G) a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year. 8 U.S.C. § 1101(a)(43)(G);

[and]

(M) an offense that – (i) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000[.]    8 U.S.C. § 1101(a)(43)(M)(i)

The term "offense" means "[t]he doing that which a penal law forbids to be done, or omitting to do what it commands." Bouvier's Law Dictionary 2399 (3rd ed. 1914).

In comparing these two subsections of Section 1101(a)(43), we are struck by several distinctions. First, we note that (G) is limited to "*a theft* offense;" second, in (M), Congress uses the broader term "an offense" (as does every other 14 different offenses set forth in (43) (E), (H) through (L) and (N) through (U);[3] third, (M) and the laundering money offense (D) are the only offenses listed in Section (43) that set a minimum amount of damages that must be proved before the offense may qualify as an "aggravated felony."

These distinctions are significant. It could be that because all other offense

---

[3] Offenses relating to explosive materials, firearms, violence, demand for receipt of ransom, child pornography, racketeering influenced corrupt organizations, gambling, prostitution, peonage, slavery or involuntary servitude, misuse of national defense information, alien smuggling, smuggling, failure to appear for service of a sentence, bribery, counterfeiting, forgery, trafficking in altered vehicle identification numbers, obstruction of justice, perjury or subornation of perjury, bribery of a witness, failure to appear before a court on a felony charge, an attempt or conspiracy to commit an offense described in § 1101(a)(43).

portions of Section 1101(a)(43) are listed in the universal form "offense" rather than the limited or particular form "theft offense," that Congress intended that Subsection M(i) apply only to theft offenses. Indeed, a case could be made that was its intention. This view would find support in the rules of logic discussed heretofore in the distinctions between universal and particular propositions, and distributed and undistributed terms. In any event, for our immediate purposes, it is not necessary for us to decide how many of the other 14 offenses listed in Section 1101(a)(43), *if any*, are limited by Subsection M(i). And we expressly do not do so. Suffice it to say, we decide here only that M(i) clearly applies to those "theft offenses" under Subsection (G) that are anchored on "fraud or deceit."

In the view we take we therefore reject the "either-or" arguments advanced by the parties. We reject the government's contention that the naked language of Subsection (G) compels a conclusion that Nugent committed an "aggravated felony" as defined by Section 1103(a)(43) of the INA; and also reject Nugent's argument that Subsection (G) does not apply, that he did not commit a theft, but only an offense involving fraud or deceit under Subsection (M)(i).

Instead, we hold that Congress' intent was for both G and M(i) to apply to an "offense" involving "theft" and "fraud or deceit," and thus the requirements of both provisions must be fulfilled for such an offense to qualify as an aggravated felony for purposes of the INA.

Accordingly, we must decide in favor of the Appellant because the property loss involved was less than the statutory minimum.

## A.

First, the logicians teach us that a term, such as "an offense" as contained in Section 1101(a)(43)(M) or "a theft offense" as in Section 1101(a)(43)(G), is said to have both a quality and a quantity. Here we are concerned with quantity. The quantity of a proposition is universal or particular according to whether the proposition refers to all members of a class or to some members of the class designated by its subject term. In the case of (M) we have a term representing all members of a class – "an offense."

When a term contains no restrictions (as in (M) – "an offense"), logicians refer to it as "distributed," and the proposition of which it is the subject as "universal" and is a class. In the universe of offenses set forth in Section 1101(a)(43), however, the term "theft offense" in (G) is predicated on some, but not all, of the distributed term "an offense" in (M), and is therefore considered as "undistributed" and is a subclass. The proposition of which it is the subject is denoted as a "particular." See Ruggero J. Aldisert, Logic for Lawyers: A Guide to Clear Legal Thinking 57-59 (3rd ed. 1997); Irving M. Copi, Introduction to Logic 173 (7th ed. 1986). Expressed in less technical phrasing: "All theft offenses are offenses, but not all offenses are theft offenses."

19

We are taught that conclusions in all reasoning, including legal reasoning, deductive or inductive analogy, "derive[] their validity from the axiom known as the dictum de omni et nullo, which states: "What is true of the universal (or class) is true of the particular (or subclass)." Joseph Gerard Brennan, A Handbook of Logic 64 (1957); see also Ralph M. Eaton, General Logic 97 (1931). This is an axiom concerning all or none in its class. It was first established by Aristotle, but in today's legal reasoning it is the unstated linchpin in formulating the major premise in every categorical deductive syllogism that lawyers use in their briefs, and judges in their opinions. The axiom may also be stated as: If every member of a class has (or does not have) a certain property, and if certain individuals are included in that class, then these individuals have (or do not have) the property. See L.S. Stebbing, A Modern Introduction to Logic 86 (6th ed. 1948) ("[t]hat one term should be included in another as in a whole is the same as for the other to be predicated of all of the first") (quoting Aristotle, Anal. Priora, 24(b) 26-30).

We believe, therefore, that the logical framework used to support the conclusion we reach can be set forth in the following polysyllogism:[4]

Depriving another of property by fraud or deceit is an offense (M).

The offense of theft by deception deprives another of property by theft (G).

Therefore, the offense of theft by deception is an offense under (M) and (G).

\* \* \* \* \*

The offense of theft by deception is an offense under (M) and (G).

A violation of Pennsylvania's theft by deception statute, § 3922, is an offense of theft by deception.

Therefore, a violation of Pennsylvania's theft by deception statute, § 3922, is an offense under (M) and (G).

---

[4] A polysyllogism is defined as "a series of syllogisms in which the conclusion of one becomes the premise of the next. In such a series the syllogism whose conclusion becomes the succeeding premise is called the prosyllogism; a syllogism in which one premise is the conclusion of a preceding syllogism is call an episyllogism." Logic for Lawyers, supra, at 64.

With the foregoing as our analytical guide, we now proceed to evaluate the elements of Sections 1101(a)(43)(G) and (M)(i) of the INA and those of the Pennsylvania theft by deception statute, 18 Pa. Cons. Ann. Stat. § 3922. It is beyond cavil that the particular or subclass Pennsylvania statute under which Nugent was convicted falls within the purview of "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(G). The sole question for decision is whether Pennsylvania's theft by deception statute, which is subsumed in Section 1101(a)(43)(G) as a particular "theft offense," also comes within the universal (or class) nature of "an offense" bottomed on fraud or deceit under Section 1101(a)(43)(M)(i). We hold that it does.

B.

First, under the teachings of <u>Bell</u>, we decide that in drafting the INA, Congress recognized the distinction in theft offenses coming within the common law offense of larceny and the statutory offense of false pretenses. It recognized that larceny required a taking (caption) and carrying away (asportation) of another's property. A taking occurs when the offender secures dominion over the property, and a carrying away requires slight movement away of the property. LaFave, <u>supra</u>, at 74. Congress knew that the offense of false pretenses was not known at common law, and that it is statutory in nature and stems from 30 Geo II, c. 24 (1757), which punishes one who "knowingly and designedly, by false pretense or pretenses, shall obtain from any person or persons, money, goods, wares or merchandises, with intent to cheat or defraud any person or persons of the same." Accordingly, we believe that when Congress defined a particular species of aggravated felony in Section 1101(a)(43)(M)(i) as "an offense that . . . involves fraud or deceit" it had in mind, inter alia, the statutory offense of false pretenses.

The Pennsylvania's theft by deception statute under which Nugent was convicted provides in part:

> (a) Offense defined – A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:

> (1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise . . . .

18 Pa. Cons. Stat. Ann. § 3922. In evaluating this statute, we turn to relevant provisions and the ALI's accompanying commentary of the Code. We are obliged to do this because 18 Pa. Cons. Stat. Ann. § 3922, theft by deception, was adopted by the Pennsylvania legislature word for word

from Code § 223.3, theft by deception.

Examining the official commentaries of the ALI relating to § 223.3, we are informed that this section "covers that portion of the consolidated offense of theft that derives from the traditional offense of obtaining property by false pretenses . . . [which] is statutory in origin. It stems from 30 Geo 2, ch. 24 (1757)." ALI, Model Penal Code and Commentaries, § 223.3 Theft by Deception, 180 and n.1 (1980). The ALI makes clear that "theft by deception" states the elements of the statutory offense of false pretenses. Moreover, the commentaries indicate that many states have adopted § 223.3 and many other states have enacted statutes that also describe false pretenses as "theft."

It is significant that in the very language of Pennsylvania's theft by deception statute, various forms of the word "deceive" appear in five places; "false impression," in three places. Supporting our conclusion that a Pennsylvania theft by deception offense falls within the purview of Section 1101(a)(43)(M)(i) of the INA are accepted definitions of the words "fraud" and "deceit" as used in that provision. Fraud has been defined as "conduct which operates prejudicially on the rights of others, and is so intended; deception practiced to induce another to part with property, or surrender some legal right, and which accomplished the end desired." James Ballentine, Law Dictionary with Pronunciations 526 (1930). "In common parlance, the word 'defraud' means to

cheat or wrongfully deprive another of his property by deception or artifice." United States v. Thomas, 315 F.3d 190, 200 (3d Cir. 2002) (internal quotations and citation omitted); see also United States v. Summers, 19 F.2d 627 (W.D. Va. 1927) ("The word 'fraud,' as commonly used, implies deceit, deception, artifice, trickery."). Ballentine defines "deceit" as "[a] species of fraud; actual fraud consisting of any false representation or contrivance whereby one person overreaches and misleads another to his hurt." Ballentine, supra, at 335. By its very language, the Pennsylvania statute is bottomed on "fraud" and "deceit."

This, too, must be said. In commentary accompanying the proposed official draft of the Code dealing with "Bad Checks," § 224.5, the ALI stated: "[I]f the check is over $500.00, the passer could be prosecuted for felonious theft by deception, under Sections 223.1(2) and 223.3." ALI, Model Penal Code, Reprint – Proposed Official Draft (May 4, 1962). Moreover, in the Official Comment to the Pennsylvania bad checks statute, 18 Pa. Cons. Stat. Ann § 4105, we are told: "A person who passes a bad check could be prosecuted for theft by deception under Section 3922." As in 18 U.S.C. § 1103(a)(43)(M)(i), the structure of Pennsylvania's theft by deception statute includes a minimum amount of damages to qualify as an elevated offense.

The final reason, and not the least important, why we believe that Congress intended to import the provisions of (M)(i) into the "theft offenses" of (G) is that were

22

we not to consider "theft offenses" as a subclass of "an offense that . . . involves fraud or deceit," the application of (M)(i) would be seldom invoked. Moreover, were it not for the $10,000 loss limitation of (M)(i), then in those jurisdictions like Pennsylvania that hold that a person who passes a bad check of a modest amount could be convicted of theft by deception, we would be faced with the anomalous situation that the minor offense would be considered an aggravated felony.

For all of these reasons, we conclude that a conviction under Pennsylvania's theft by deception statute is the type of offense that comes within 8 U.S.C. § 1101(a)(43)(M)(i), "an offense that . . . involves fraud or deceit," albeit it too comes within 8 U.S.C. § 1101(a)(43)(G), "a theft offense." Because the particular Pennsylvania statute is designed entirely on all-embracing concepts of fraud or deceit – various forms of the word "deceive" appear five times and "false impression" three times – it is precisely the particular type of theft contemplated in the universal class of offenses set forth in the fraud or deceit Subsection 1101(a)(43)(M)(i). We therefore apply the axiom de omni et nullo: what is true of the universal (or class) in § 1101(a)(43)(M)(i) is true for the particular (or subclass) in § 1101(a)(43)(G).

* * * * *

In reaching our ultimate conclusion, therefore, we follow the teachings of Drakes and conclude that "more 'generic,

contemporary' definitions" found in the Code, as adopted verbatim by Pennsylvania's legislature, supply the meaning that "best accords with the overall purposes of the statute." 240 F.3d at 249 (internal quotation and citations omitted). We determine that although an offense under the Pennsylvania statute is a "theft offense" so that Section 1101(a)(43)(G) applies, because the state statute is bottomed on "fraud or deceit," the offense must also meet the requirements of Section 1101(a)(43)(M)(i) to qualify as an aggravated felony under the INA. We accordingly conclude that Nugent's bad checks transaction for which he was convicted under Pennsylvania's theft by deception statute does not qualify as an aggravated felony as defined by the INA, because although the term of imprisonment imposed on Nugent was one year or more, the victims' loss did not exceed $10,000.

Accordingly, we will dismiss the petition for review at No. 02-0329 for lack of jurisdiction. In the appeal at No. 04-1541, for reasons other than those stated by the district court as set forth above, we will affirm the judgment of the district court without prejudice to the Appellant to apply to the Attorney General for cancellation of the removal order pursuant to 8 U.S.C. § 1229b.[5]

---

[5]Title 8 U.S.C. § 1229b(e) limits the number of actions by the Attorney General that cancel the removal or adjusts the status of aliens under section 1229b.

23

Rendell, <u>Circuit Judge</u> - Concurring.

I am pleased to join in the majority's scholarly opinion. As amply demonstrated by the majority's historical exegesis, theft by deception is a hybrid crime that is both a theft offense, 8 U.S.C. § 1101(a)(43)(G), and an offense involving fraud or deceit, 8 U.S.C. § 1101(a)(43)(M)(i). Therefore, in order to qualify as an aggravated felony, it must be shown that Nugent's conviction for theft by deception qualifies under the statutory definitions for both theft offenses and fraud/deceit offenses. I think this is necessary to carry out Congress's intention. Nugent's conviction was for an offense that involved deceit resulting in a loss of less than the $10,000 minimum set forth in (M)(i). However, while I applaud Judge Aldisert's logical *tour de force* in devising a way to reason to this conclusion under the statute, I write separately to stress that this logic should not compel that we combine definitions within this section, as a general rule. Rather, only where an offense is a hybrid—as I submit theft by deception is—and the aggravated felony classifications contain two distinct, clearly applicable tests, should we conclude that both must be fulfilled in order for the offense to qualify as an aggravated felony.